**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA          :

    **v.**                                     :          **CRIMINAL NO. 05-440**

**ALTON COLES,**                       :
      **a/k/a "Naseem Coles,"**

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The defendant Alton Coles, who recently was indicted in the Eastern District of Pennsylvania for being a felon in possession of a firearm, is a serious risk of flight. He actively maintained and utilized at least two social security numbers, two dates of birth, and three separate aliases, including three Pennsylvania-issued driver's licenses with three different names and addresses. After being convicted in New Jersey in 1996 for narcotics offenses, he failed to appear for sentencing and was declared a fugitive. A bench warrant was issued for him under the name of one of his aliases. When he was arrested in May 2002, he was found in possession of a firearm. The defendant also committed the instant crime on October 24, 2004, while he was on bail and awaiting trial in Philadelphia for a firearms offense committed in March 2004, clearly demonstrating that he has no regard for the authority of the court and is entirely incapable of abiding by any bail restrictions. Further, he was on probation from the 1996 New Jersey narcotics conviction when he committed both the March 2004 offense and the instant offense. He also currently faces a lengthy prison sentence of up to ten years, providing him substantial incentive to flee. Finally, when he was arrested in this case on August 10, 2005, he asked law enforcement officials, "How did you guys find me? Did you use a GPS device on my phone?"

These facts reveal an obvious intention of the defendant to conceal his true identity and avoid law enforcement and demonstrate that he is indeed a serious risk of flight.

The defendant also is violent, highly dangerous, and poses a significant threat to the safety of the community. He was convicted numerous times by the Commonwealth of Pennsylvania for felony narcotics offenses, firearms offenses, using fighting animals, and reckless endangerment. In addition, in a search incident to arrest at the defendant's residence on August 10, 2005, agents discovered in his bedroom a firearm magazine loaded with approximately 8 live rounds of ammunition, a gun box, a gun barrel cleaning device, and a separate box containing approximately 50 live rounds of ammunition. As a convicted felon, the defendant is prohibited from possessing ammunition, let alone the firearm for which he was indicted, and could face additional federal charges. Further, as stated above, the defendant continued to commit firearms and ammunition offenses even while he was on probation, while he was a fugitive, and while he was awaiting trial for a firearms offense in Philadelphia.

Because no condition or combination of conditions will reasonably assure the defendant's appearance as required,[1] or reasonably assure the safety of any other person or the community, the government moves pursuant to 18 U.S.C. §§ 3142(e) and (f) for a detention hearing and pretrial detention of the defendant.

---

[1]    "[I]t is reasonable to interpret [18 U.S.C. § 3142(e) and (f)] as authorizing detention only upon proof of a likelihood of flight . . . ." United States v. Himler, 797 F2d. 156, 160 (3d Cir. 1986). The government's burden in demonstrating risk of flight is preponderance of the evidence. Id. at 161

## I.     THE FACTS

In support of this motion, the government makes the following representations and proposed findings of fact:

### A.     Probable Cause And The Evidence In This Case

1.     There is probable cause to believe that the defendant violated Title 18, United States Code, Section 922(g)(1), as charged in the indictment.

2.     The evidence in this case is strong.

a.     On October 24, 2004, at approximately 2:25 a.m., Philadelphia Police Officers Grant, Smith, Finnegan, and Chisholm responded to a radio call ("man with a gun") in the vicinity of 6th and Spring Garden Streets.  The officers observed a blue Bentley and several males running from the car.  Officers Finnegan and Chisholm pursued Alton Coles to 700 Spring Garden Street, where they observed Coles throw a handgun into a vacant lot.  The officers stopped Coles and then recovered from the lot a silver and black Smith & Wesson semi-automatic 9mm handgun, serial number TEU8998, loaded with four live rounds of ammunition.  Coles was arrested because he had no permit to carry the firearm.

b.     The firearm was operable and traveled in interstate commerce.

c.     The defendant previously had been convicted of a felony.

On August 10, 2005, upon the issuance of a bench warrant, agents arrested the defendant at his residence located at 117 Dillon Lane, Mullica Hill, New Jersey, where the defendant had been sleeping.  In his bedroom, agents discovered a firearm magazine loaded with approximately 8 live rounds of ammunition, a gun box, a gun barrel cleaning device, and a separate box containing approximately 50 live rounds of ammunition.  As a convicted felon, the

defendant was prohibited from possessing the ammunition discovered in his residence, as well as the firearm for which he was indicted.

**B.      Maximum Penalties**

The total maximum statutory penalty the defendant faces is ten years imprisonment, a fine of $250,000, three years supervised release, and a special assessment of $100.  Accordingly, the defendant has a substantial incentive to flee.

**C.      Criminal Record**

1      The defendant has the following prior adult convictions:

a.      December 2, 1993, an arrest for violation of the controlled substance/ drug/ delivery act, reckless endangerment, insurance laws, fleeing police, and other vehicular violations in Darby, Pennsylvania; the defendant pled guilty to misdemeanor narcotics charges, reckless endangerment, and violations of insurance laws;

b.      March 15, 1994, an arrest for criminal conspiracy, firearms violations, and violation of the controlled substance/ drug/ delivery and cosmetic act in Darby, Pennsylvania; the defendant pled guilty to criminal conspiracy, firearms violations, and misdemeanor narcotics charges and received a sentence of two years probation;

c.      April 15, 1994, an arrest for criminal conspiracy, and violation of the controlled substance/ drug/ delivery and cosmetic act in Darby, Pennsylvania; the defendant pled guilty to felony narcotics charges and received a sentence of two years probation;

d.      December 30, 1996, an arrest for being a fugitive from justice, manufacturing and/or distributing a controlled substance, possession of a controlled substance, and possession of a controlled substance on school property in Cherry Hill Township, New

Jersey; the defendant was convicted of possession of a controlled substance and sentenced to one year probation.  The defendant failed to appear for sentencing and was declared a fugitive.  The court issued a bench warrant for his arrest under the name of one of his aliases.  When the defendant finally was arrested in Philadelphia in May 2002, he was in possession of a firearm.

        e.        October 28, 2001, an arrest for criminal trespass and use of fighting animals in Dover Township, New Jersey; the defendant was convicted of the use of fighting animals and sentenced to thirty-four days incarceration; and

        f.        March 27, 2004, an arrest for carrying a firearm by a convicted felon on a public street, without a license in Philadelphia, Pennsylvania; this case is pending in state court.  At the time of this arrest, the defendant was on probation for his offense in Cherry Hill, New Jersey, for possession of a controlled substance.

        g.        October 24, 2004, an arrest for carrying a firearm by a convicted felon on a public street, without a license in Philadelphia, Pennsylvania; this is the case that was adopted federally in the Eastern District of Pennsylvania.  At the time of this arrest, the defendant was on bail awaiting trial for the March 2004 arrest in Philadelphia, and was still on probation for his offense in Cherry Hill, New Jersey, for possession of a controlled substance.

        As his record clearly demonstrates, the defendant is utterly incapable of conforming his behavior to abide by the law.  The defendant, who is 31 years old, has been committing crimes since he was 19.  It is particularly significant that the older the defendant got the more violent and serious his crimes became.  For example, he began with a conviction for reckless endangerment and misdemeanor narcotics offenses, and graduated to felony narcotics, firearms crimes, and using fighting animals.  Of course, his committing the instant firearms

offense while he was awaiting trial for another firearms offense in Philadelphia, and while he was on probation for his New Jersey conviction in 1996, underscores his inability to retard his recidivist criminal behavior, and increases the likelihood that he will continue to commit crimes while awaiting trial in this case if he were not detained.  It is apparent that the defendant does not abide by orders of the court.  Accordingly, there is little doubt as to what the defendant would do if he were not detained:  He would continue to threaten society with his criminal behavior.

### D.    Violation of State Probation

The defendant committed the current offense, and his March 2004 firearms offense, while on probation for his 1996 New Jersey conviction, further demonstrating the defendant's lack of respect for the court system and its orders.

### E.    Community/Family Ties Have Not Stopped The Defendant Before

1.    Any family ties the defendant has in the area have already proved insufficient to deter him from a frightening pattern of recidivist criminality.

### F.    Aliases

The defendant is a high risk of flight because, until the date of his arrest, he used several different aliases.  For example, he has been issued by the Commonwealth of Pennsylvania at least three different driver's licenses, two under an alias and each with a different address.  In addition, at the time of his arrest, investigators discovered two automobiles in his driveway.  One automobile was a luxury Ford F-150 pickup truck.  Investigators learned that the truck was rented from Enterprise Rent-A-Car in the name "Naseem Coles," the name of the defendant's minor son and one of the aliases the defendant used on a Pennsylvania-issued driver's license, as well as the alias the defendant provided the police when he was arrested for

- 6 -

the instant offense.[2]  Another luxury automobile, a Bentley worth approximately $250,000, also was found in the driveway.  Investigators learned that this automobile was registered to an individual named "Damon Dash" in New York.[3]

Moreover, the house in which the defendant was arrested,[4] 117 Dillon's Lane, Mullica Hill, New Jersey, is registered to a woman named Asya Richardson.  Mortgage records received from the bank, however, reveal that Richardson earns approximately $21,000 per year, whereas the house is worth approximately $500,000, indicating that Richardson likely is a straw owner of the property, thus allowing the defendant, who appeared to be residing there, to conceal his identity and the full extent of his assets.

Finally, the defendant, who has used at least two different social security numbers and dates of birth, as well as the false driver's licenses, asked law enforcement officials when he was arrested on August 10, 2005, "How did you guys find me? Did you use a GPS device?"  This evinces a clear intent by the defendant to cloak his true identity, which he has made every effort to preserve, in the automobiles he drives, the house in which he resides, and, of course, from the police who arrested him.  It is apparent, therefore, that he would continue to hide from

---

[2] An agent of Enterprise, when interviewed by investigators, revealed that the automobile was leased to "Naseem Coles" with a payment of $400 in cash, and an additional dollar amount placed on a credit card, also issued to "Naseem Coles."  The defendant's son, Naseem Coles, who is approximately 9 years old, was present in the house when the defendant was arrested on August 10, 2005.

[3] The defendant was driving this automobile when he was arrested in this case on October 24, 2004.  In addition, investigators conducting surveillance spotted the defendant driving this automobile in Philadelphia in the summer of 2005.

[4] Moments before the defendant was arrested, he had been asleep in this residence with Asya Richardson.

law enforcement officials, elude the authority of the court, and flee to avoid this federal prosecution if he were not detained pending trial.

## II.    CONCLUSION

When all these factors are viewed in light of the substantial sentence the defendant faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of the defendant as required, and assure the safety of any other person and the community.

WHEREFORE, the government respectfully submits that its Motion for Defendant's Pretrial Detention should be granted.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney



MICHAEL J. BRESNICK
Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | **CRIMINAL NO. 05-440** |
| ALTON COLES | : | |
| a/k/a "Naseem Coles" | | |

**PRETRIAL DETENTION ORDER**

AND NOW, this      day of              , 2005, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a)    the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and/or

(b)    the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person or the community.

**I.    THE FACTS**

The Court makes the following findings of fact:

**A.    Probable Cause And The Evidence In This Case**

1.    There is probable cause to believe that the defendant violated Title 18, United States Code, Section 922(g)(1), as charged in the indictment.

2.    The evidence in this case is strong.

a.    On October 24, 2004, at approximately 2:25 a.m., Philadelphia Police Officers Grant, Smith, Finnegan and Chisholm responded to a radio call ("man with a

gun") in the vicinity of 6th and Spring Garden Streets. The officers observed a blue Bentley and several males running from the car. Officers Finnegan and Chisholm pursued Alton Coles to 700 Spring Garden Street, where they observed Coles throw a handgun into a vacant lot. The officers stopped Coles and then recovered a silver and black Smith & Wesson semi-automatic 9mm handgun, serial number TEU8998, loaded with four live rounds of ammunition. Coles was arrested because he had no permit to carry the firearm.

    b.  The firearm was operable and traveled in interstate commerce.

    c.  The defendant previously had been convicted of a felony.

**B. Maximum Penalties**

    The total maximum statutory penalty the defendant faces is ten years imprisonment, a fine of $250,000, three years supervised release, and a special assessment of $100. Accordingly, the defendant has a substantial incentive to flee.

**C. Criminal Record**

    1  The defendant has the following prior adult convictions:

    a.  December 2, 1993, an arrest for violation of the controlled substance/ drug/ delivery act, reckless endangerment, insurance laws, fleeing police, and other vehicular violations in Darby, Pennsylvania; the defendant pled guilty to misdemeanor narcotics charges, reckless endangerment, and violations of insurance laws;

    b.  March 15, 1994, an arrest for criminal conspiracy, firearms violations, and violation of the controlled substance/ drug/ delivery and cosmetic act in Darby, Pennsylvania; the defendant pled guilty to criminal conspiracy, firearms violations, and misdemeanor narcotics charges and received a sentence of two years probation;

c.      April 15, 1994, an arrest for criminal conspiracy, and violation of the controlled substance/ drug/ delivery and cosmetic act in Darby, Pennsylvania; the defendant pled guilty to felony narcotics charges and received a sentence of two years probation;

d.      December 30, 1996, an arrest for being a fugitive from justice, manufacturing and/or distributing a controlled substance, possession of a controlled substance, and possession of a controlled substance on school property in Cherry Hill Township, New Jersey; the defendant was convicted of possession of a controlled substance and sentenced to one year probation.  The defendant failed to appear for sentencing and was declared a fugitive.  The court issued a bench warrant for his arrest under the name of one of his aliases.  When the defendant finally was arrested in Philadelphia in May 2002, he was in possession of a firearm.

e.      October 28, 2001, an arrest for criminal trespass and use of fighting animals in Dover Township, New Jersey; the defendant was convicted of the use of fighting animals and sentenced to thirty-four days incarceration; and

f.      March 27, 2004, an arrest for carrying a firearm by a convicted felon on a public street, without a license in Philadelphia, Pennsylvania; this case is pending in state court.  At the time of this arrest, the defendant was on probation for his offense in Cherry Hill, New Jersey, for possession of a controlled substance.

g.      October 24, 2004, an arrest for carrying a firearm by a convicted felon on a public street, without a license in Philadelphia, Pennsylvania; this is the case that was adopted federally in the Eastern District of Pennsylvania.  At the time of this arrest, the defendant was on bail awaiting trial for the March 2004 arrest in Philadelphia, and was still on probation for his offense in Cherry Hill, New Jersey, for possession of a controlled substance.

- 3 -

As his record clearly demonstrates, the defendant is utterly incapable of conforming his behavior to abide by the law. The defendant, who is 31 years old, has been committing crimes since he was 19. It is particularly significant that the older the defendant got the more violent and serious his crimes became. For example, he began with a conviction for reckless endangerment and misdemeanor narcotics offenses, and graduated to felony narcotics, firearms crimes, and using fighting animals. Of course, his committing the instant firearms offense while he was awaiting trial for another firearms offense in Philadelphia, and while he was on probation for his New Jersey conviction in 1996, underscores his inability to retard his recidivist criminal behavior, and increases the likelihood that he will continue to commit crimes while awaiting trial in this case if he were not detained. It is apparent that the defendant does not abide by orders of the court. Accordingly, there is little doubt as to what the defendant would do if he were not detained: He would continue to threaten society with his criminal behavior.

D.      **Violation of State Probation**

The defendant committed the current offense, and his March 2004 firearms offense, while on probation for his 1996 New Jersey conviction, further demonstrating the defendant's lack of respect for the court system and its orders.

E.      **Community/Family Ties Have Not Stopped The Defendant Before**

1.      Any family ties the defendant has in the area have already proved insufficient to deter him from a frightening pattern of recidivist criminality.

F.      **Aliases**

The defendant is a high risk of flight because, until the date of his arrest, he used several different aliases. For example, he has been issued by the Commonwealth of

- 4 -

Pennsylvania at least three different driver's licenses, two under an alias and each with a different address. In addition, at the time of his arrest, investigators discovered two automobiles in his driveway. One automobile was a luxury Ford F-150 pickup truck. Investigators learned that the truck was rented from Enterprise Rent-A-Car in the name "Naseem Coles," the name of the defendant's minor son and one of the aliases the defendant used on a Pennsylvania-issued driver's license, as well as the alias the defendant provided the police when he was arrested for the instant offense.[5] Another luxury automobile, a Bentley worth approximately $250,000, also was found in the driveway. Investigators learned that this automobile was registered to an individual named "Damon Dash" in New York.[6]

Moreover, the house in which the defendant was arrested,[7] 117 Dillon's Lane, Mullica Hill, New Jersey, is registered to a woman named Asya Richardson. Mortgage records received from the bank, however, reveal that Richardson earns approximately $21,000 per year, whereas the house is worth approximately $500,000, indicating that Richardson likely is a straw owner of the property, thus allowing the defendant, who appeared to be residing there, to conceal his identity and the full extent of his assets.

---

[5] An agent of Enterprise, when interviewed by investigators, revealed that the automobile was leased to "Naseem Coles" with a payment of $400 in cash, and an additional dollar amount placed on a credit card, also issued to "Naseem Coles." The defendant's son, Naseem Coles, who is approximately 9 years old, was present in the house when the defendant was arrested on August 10, 2005.

[6] The defendant was driving this automobile when he was arrested in this case on October 23, 2004. In addition, investigators conducting surveillance spotted the defendant driving this automobile in Philadelphia in the summer of 2005.

[7] Moments before the defendant was arrested, he had been asleep in this residence with Asya Richardson.

Finally, the defendant, who has used at least two different social security numbers and dates of birth, as well as the false driver's licenses, asked law enforcement officials when he was arrested on August 10, 2005, "How did you guys find me? Did you use a GPS device?" This evinces a clear intent by the defendant to cloak his true identity, which he has made every effort to preserve, in the automobiles he drives, the house in which he resides, and, of course, from the police who arrested him.  It is apparent, therefore, that he would continue to hide from law enforcement officials, elude the authority of the court, and flee to avoid this federal prosecution if he were not detained pending trial.

## II.    <u>CONCLUSION</u>

When all these factors are viewed in light of the substantial sentence the defendant faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of the defendant as required, and assure the safety of any other person and the community.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

HONORABLE CAROL SANDRA MOORE WELLS
United States Magistrate Judge

CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention, and

Proposed Order was served by electronic filing on the following defense counsel:

Joseph Marrone
Law Offices of Joseph M. Marrone
121 South Broad Street, 2nd Floor
Philadelphia, PA 19107


MICHAEL J. BRESNICK
Assistant United States Attorney


Date: August 15, 2005