**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 05-440** |
| **ALTON COLES,** | : | |
| a/k/a "Naseem Coles," | | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S APPEAL**
**OF PRETRIAL ORDER OF DETENTION**

On August 15, 2005, the Honorable Carol Sandra Moore Wells, United States

Magistrate Judge for the Eastern District of Pennsylvania, ordered that the defendant Alton

Coles, who recently was indicted in the Eastern District of Pennsylvania for being a felon in

possession of a firearm, be detained pending trial because he is a serious risk of flight and a

danger to the community.[1]  Judge Wells's findings and order that the defendant is a serious risk

of flight are amply supported by the evidence.  For example, there is no dispute that the

defendant actively maintained and used two different aliases, Naseem Coles and Naail Johnson,

on two Pennsylvania-issued driver's licenses, each of which contained different dates of birth,

driver's license numbers, and addresses.  A third driver's license, which contains the defendant's

true name, has a third driver's license number, date of birth, and address.  It is also beyond

dispute that the defendant provided a third alias, Lamar Johnson, to New Jersey law enforcement

---

[1]  The defendant complains that the government's brief was filed late.  This is not so.  At the
defendant's initial appearance on Wednesday, August 10, 2005, the government requested three
days to research and prepare a detention motion.  Judge Wells granted the government until
Monday, August 15, 2005, to file the motion.  As discussed more fully below, the government
needed this time to allow investigators to research the defendant's extensive criminal background
and to conduct interviews of several people that ultimately revealed the extent and breadth of lies
the defendant told to U.S. Pretrial Services, Philadelphia police, and federal investigators,
including lies about his name, address, date of birth, and social security number.

when he was arrested on a narcotics charge in 1996 and, after being convicted for this offense, failed to appear for sentencing and was declared a fugitive. A bench warrant was issued for him under the name Lamar Johnson. Rather than voluntarily surrender, the defendant remained a fugitive for six years until he was arrested in May 2002. At the time of his arrest, he possessed a firearm.[2]

In addition, the defendant committed the instant crime on October 24, 2004, while he was on bail and awaiting trial in Philadelphia for a firearms offense committed in March 2004, clearly demonstrating that he has no regard for the authority of the court and is entirely incapable of abiding by any bail restrictions. Further, he was on probation from an earlier conviction when he committed both the March 2004 offense and the instant offense. He also currently faces a lengthy prison sentence of up to ten years, providing him substantial incentive to flee. Finally, when he was arrested in this case on August 10, 2005, he asked law enforcement officials, "How did you guys find me? Did you use a GPS device on my phone?" These facts reveal an obvious intention of the defendant to conceal his true identity and avoid law enforcement and demonstrate that he is indeed a serious risk of flight.

Judge Wells's finding and order that the defendant also is violent, highly dangerous, and poses a significant threat to the safety of the community, are equally borne by the evidence. The defendant was convicted numerous times by the Commonwealth of Pennsylvania for felony narcotics offenses, firearms offenses, using fighting animals, and reckless endangerment. In addition, in a search incident to arrest at the defendant's residence on August

---

[2] While the defendant's claim that the firearms charges were dismissed may be true, he does not dispute that he was a fugitive for six years because he failed to appear for sentencing.

10, 2005, agents discovered in his bedroom a firearm magazine loaded with approximately 8 live rounds of ammunition, a gun box, a gun barrel cleaning device, and a separate box containing approximately 50 live rounds of ammunition.  The gun box, moreover, matches the gun that the defendant was arrested for possessing in March 2004 by the Philadelphia police– the same case the defendant calls "very weak."  In addition, as a convicted felon, the defendant is prohibited from possessing ammunition, let alone the firearm for which he was indicted, and could face additional federal charges.  Last, as stated above, the defendant continued to commit firearms and ammunition offenses even while he was on probation, while he was a fugitive, and while he was awaiting trial for a firearms offense in Philadelphia.

Because no condition or combination of conditions will reasonably assure the defendant's appearance as required,[3] or reasonably assure the safety of any other person or the community, the government respectfully requests that the Court not disturb Judge Wells's order of detention.

## I.     THE DEFENDANT IS A SERIOUS RISK OF FLIGHT

### A.     ALIASES

The defendant has used at least three separate Pennsylvania-issued driver's licenses, each with different names, dates of birth, and addresses.  On each license, the defendant provided the following information:

---

[3]     "[I]t is reasonable to interpret [18 U.S.C. § 3142(e) and (f)] as authorizing detention only upon proof of a likelihood of flight . . . ."  United States v. Himler, 797 F2d. 156, 160 (3d Cir. 1986).  The government's burden in demonstrating risk of flight is preponderance of the evidence.  Id. at 161

|    | NAME | DRIVER'S LICENSE # | DOB | ADDRESS |
|----|------|--------------------|-----|---------|
| 1. | Alton Coles | 24 618 141 | 1/13/1974 | 4514 Pine St. |
| 2. | Naail Johnson | 26 941 186 | 5/24/1974 | 2063 S. 57th St. |
| 3. | Naseem Coles | 26 943 569 | 9/28/1974 | 5856 Cedar Ave. |

The defendant's use of these three licenses demonstrates a clear intent to avoid detection by law enforcement and cloak his true identity. There simply is no logical reason why an individual would use three licenses with different names, addresses, and dates of birth, other than for a nefarious purpose and to assist him in avoiding detection by law enforcement.

In his appeal, the defendant's attempt to explain his use of three different driver's licenses is nonsensical. He claims that in the entertainment industry, in which the defendant is supposed to work,[4] "the use of aliases is quite common" (Def. Br. at ¶ 7). Moreover, he claims that the name "Naail Johnson was a name that he used for many years that stuck to him." Id. These arguments, however, do not address the critical issue: Why did the defendant use two aliases, three dates of birth, and three address on Pennsylvania-issued driver's licenses, if not to cloak his true identity and to avoid law enforcement? While the government concedes that the use of aliases in the entertainment industry might be common, it can think of no legitimate reason why an entertainer would use an alias on a state-issued driver's license. Surely the defendant's hollow response is a concession that he, in fact, also can offer no such reason.

Moreover, the defendant's argument that he never used his aliases to "defraud anyone or conceal defendant's identity[,]" id., is plainly refuted by a surplus of evidence. In fact,

---

[4] It is curious that when the defendant was arrested by the Philadelphia police for the instant offense in October 2004, he claimed that he worked in "construction."

the defendant has used the alias "Naseem Coles," the name of his 9-year old minor son, on numerous occasions to conceal his identity. For instance, at the time of his federal arrest in this case on August 10, 2005, investigators discovered two automobiles in his driveway. One automobile was a luxury Ford F-150 pickup truck. Investigators learned that the truck was rented from Enterprise Rent-A-Car in the name "Naseem Coles." An agent of Enterprise, when interviewed by investigators, revealed that the automobile was leased to "Naseem Coles" with a payment of $400 in cash, and an additional dollar amount placed on a credit card, also issued to "Naseem Coles." Further, the defendant provided the name "Naseem Coles" to the police when he was arrested for the instant offense in October 2004. The defendant also provided the name "Lamar Johnson," an alias, to law enforcement in New Jersey when he was arrested for narcotics violations. When he failed to appear for sentencing, a bench warrant was issued for him in the name Lamar Johnson. Last, by his very use of aliases on Pennsylvania-issued driver's licenses, the defendant has concealed his true identity from the Commonwealth of Pennsylvania and any law enforcement who may be looking for him.

The defendant's own statements to law enforcement when he was arrested on August 10, 2005, reveal his interest in avoiding detection. He asked the agents curiously, "How did you guys find me? Did you use a GPS device on my phone?" In other words, the defendant, who has used multiple aliases, was surprised that the agents were able to find him.

It is apparent, therefore, that the defendant does not have a legitimate answer regarding his use of several aliases and driver's licenses, including different dates of birth and addresses, which he has used frequently to hide his true identity, including from law enforcement

and while he was a fugitive.  The excuse he offered in an attempt to minimize his culpability simply has no value.

**B.**     **<u>DEFENDANT WAS A FUGITIVE IN NEW JERSEY</u>**

After the defendant was convicted in New Jersey in 1996 for a narcotics violation, he failed to appear for his sentencing.  Accordingly, the court issued a bench warrant for the defendant's arrest.  The defendant remained a fugitive for six years.  Finally, in May 2002, Philadelphia police arrested the defendant and returned him to New Jersey for sentencing.  The defendant attempts to dismiss the significance of these fact by noting that the defendant received only one-year probation in New Jersey for the then-pending charges.  His attempts, however, only underscore the government's position; specifically, he does not deny that he was, in fact, a fugitive for six years.  The State of New Jersey's reaction to his fugitive status is of little moment here.  The Court must consider only whether the defendant would report to court and Pretrial as required, and not flee, even after the defendant realizes the increasing likelihood that he will be incarcerated for his offense, for which there is an abundance of evidence.  Fortunately, neither the parties nor the Court needs to guess how the defendant would react if he were confronted with a similar situation:  We know that he will flee, just as he did in New Jersey for six years until he was apprehended.

**C.**     **<u>THE DEFENDANT LIED TO PRETRIAL SERVICES</u>**

When the defendant was arrested federally on August 10, 2005, he reported to U.S. Pretrial Services that he has resided at 5856 Cedar Avenue in Philadelphia since 1999.  This is incorrect.  On the morning of the detention hearing before Judge Wells on August 15, 2005, federal investigators interviewed the residents of 5856 Cedar Avenue, Ada May and Chris

Latney.  Ada May Latney reported that (i) she owns the property, (ii) she has lived there for years, (iii) the defendant does not reside there, and (iv) the defendant never has spent a night there.[5]

In addition, the defendant claimed that he could post two properties as bond if he were released:  (1) 2661 Holbrook Street and (2) 2079 E. Somerset Street.  The defendant, however, had no ownership interest in either of these properties.  For example, investigators interviewing the owner of the property at 2661 Holbrook Street, Lorraine Baker, learned that Ms. Baker lives at that address and that the defendant, who is not welcome at the property, has not spent a single night there; in fact, Ms. Baker reported that she and the defendant "are like oil and water."  Further, on August 15, and again on August 29, the government researched real estate records to determine the registered owner of 2079 E. Somerset Street, and found it to be an individual named Yusuf Abdulhadi, who has owned the property since 2001.  The government stated these facts during the detention hearing before Judge Wells (see Transcript, Aug. 15, 2005, at pp. 6-7).

During the hearing, the defendant offered no explanation for his lie to Pretrial about residing at 5856 Cedar Avenue, and reiterated that he could reside at that address (Transcript at p. 14).[6]  He did, however, try to explain his effort to post as bond the property

---

[5]  This is not the first time the defendant has stated that he resides at 5856 Cedar Avenue. When he was arrested by the Philadelphia police in October 2004, the defendant reported that he resided there.  Thus, in addition to providing the alias "Naseem Coles" to the police, he provided a false address, and clearly attempted to conceal his true identity.

[6]  Since his appeal does not refer to 5856 Cedar Avenue, and, instead, seeks to post two different properties as bond, the defendant appears to have abandoned his effort to reside at that address, apparently conceding his lie.

located at 2079 E. Somerset Street.  He claimed, quite conveniently, that he "recently purchased that property from the owner . . . and the paperwork is not completed to put the deed in his name. So it wasn't a lie, it's something that's pending, and in the process of" (Transcript at p. 13). Even now, however, two weeks later, there is no evidence of the defendant's having purchased that property from the record owner.  In fact, it is significant that the defendant did not address the issue of ownership of this property in his appeal, and apparently has abandoned this argument as well.

Accordingly, not only did the defendant lie to Pretrial about residing at 5856 Cedar Avenue, he lied about being able to post as bond the properties at 2661 Holbrook Avenue[7] and 2079 E. Somerset Street.  Thus, in his first exposure to the federal court in the Eastern District of Pennsylvania, the defendant, who already has used numerous aliases, dates of birth, and addresses, could not be honest about something as simple as where he resides.  The only explanation for this duplicitous behavior is that he wants to dupe the Court into believing that he has a place to reside and money to post if he were released, when, in fact, he has neither. Moreover, the only conclusion to be gleaned from the defendant's lies to Pretrial and Judge Wells is that he cannot be trusted, has no respect for the Court's authority or its orders, and would not appear in court as required.

**D.        THE DEFENDANT CANNOT ABIDE BY ORDERS OF THE COURT**

In addition to being a fugitive for six years, the defendant was on probation in New Jersey when he committed the March 2004 firearms offense for which he currently is

---

[7] When he was arrested federally on August 10, 2005, the defendant told investigators that he resided at 2661 Holbrook Avenue, while later telling Pretrial that he resided at 5856 Cedar Avenue.  Both statements were false.

awaiting trial in Philadelphia, as well as the October 2004 offense that was adopted federally in August 2005.[8]  In addition, the defendant was on bail for his March 2004 firearms offense in Philadelphia when he committed the instant offense in October 2004.  It is obvious, therefore, that the defendant has no regard for the authority of the Court, and that any order of release issued by the Court would be met with as much respect as the previous orders the defendant flagrantly ignored.

### E.  THE DEFENDANT HAS NOT FILED TAX RETURNS

The defendant claims in his appeal that he "earned approximately $16,000 per month[,] (Def. Br. at ¶ 12), and that he is in the entertainment industry.  Nevertheless, records from the Internal Revenue Service indicate that he has not filed a tax return for the tax years 2000, 2001, 2002, and 2003.  The defendant's admitted wealth,[9] coupled with the absence of any

---

[8]  The defendant claims that this March 2004 case is "very weak" and that "there is evidence that the gun involved belonged to a security guard employed by the defendant."  Def. Br. at ¶ 9.  When the defendant was arrested by federal agents in this case on August 15, 2005, however, agents discovered in his bedroom a gun-barrel cleaner, approximately 58 live rounds of ammunition, and a gun box.  The serial number on the gun for which the defendant was arrested in March 2004 – the gun the defendant now claims belonged to someone else – matches the serial number on the gun box discovered in the defendant's bedroom.  Even the defendant must concede that the evidence that he possessed that gun in March 2004 is no longer "very weak."

[9]  In addition to the defendant's admission of wealth, investigators have learned that the defendant sustains a luxurious lifestyle.  For example, when he was arrested by federal agents on August 10, 2005, agents discovered in his driveway a luxury automobile, a Bentley worth approximately $250,000.  Investigators learned that this automobile was registered to an individual named "Damon Dash" in New York.  The defendant was driving this automobile when he was arrested by the Philadelphia police in this case on October 24, 2004.  In addition, investigators conducting surveillance spotted the defendant driving this automobile in Philadelphia in the summer of 2005.

Moreover, the house in which the defendant was arrested, 117 Dillon's Lane, Mullica Hill, New Jersey, is estimated to be worth approximately $500,000.  While the defendant's paramour, Asya Richardson, is listed as the owner of the property, mortgage records reflect that she earns

legitimate source for that wealth, are highly probative of defendant's involvement in criminal activity.  See, e.g., United States v. Stubbs, 944 F.2d 828, 836 (11th Cir.1991); United States v. Patterson, 819 F.2d 1495, 1501 (9th Cir.1987); United States v. Grandison, 783 F.2d 1152, 1156 (4th Cir.1986); United States v. Young, 745 F.2d 733, 762-63 (2d Cir.1984), cert. denied, 470 U.S. 1084 (1985); United States v. Trotter, 889 F.2d 153, 155 (8th Cir. 1989);  United States v. Davis, 789 F.Supp. 1130, 1132 (D.Kan. 1992).

Thus, the defendant, who has used numerous aliases, dates of birth, and addresses, has lied to Pretrial Services, Judge Wells, Philadelphia police, and federal investigators, and was a fugitive for six years, also has access to great wealth, although he has not reported the source for that wealth on federal income tax returns during a four-year period.  The defendant clearly is a tremendous risk of flight.

## II.    THE DEFENDANT IS A DANGER TO SOCIETY

The defendant is violent, highly dangerous, and poses a significant threat to the safety of the community.  He was convicted numerous times by the Commonwealth of Pennsylvania for felony narcotics offenses, firearms offenses, using fighting animals, and reckless endangerment.  In addition, in a search incident to arrest at the defendant's residence on August 10, 2005, agents discovered in his bedroom a firearm magazine loaded with approximately 8 live rounds of ammunition, a gun box, a gun barrel cleaning device, and a separate box containing approximately 50 live rounds of ammunition.  As a convicted felon, the

---

only approximately $21,000 per year, and that, in fact, the defendant originally was on the mortgage papers but was removed after he was rejected.  Last, records demonstrate that the defendant made at least a $40,000 down payment on the property, indicating that although Ms. Richardson is the registered owner, she is likely a straw purchaser, and that the defendant is the true owner attempting to conceal his interest in the property.

defendant is prohibited from possessing ammunition, let alone the firearm for which he was indicted, and could face additional federal charges.  Further, as stated above, the defendant continued to commit firearms and ammunition offenses even while he was on probation, while he was a fugitive, and while he was awaiting trial for a firearms offense in Philadelphia.

As his record clearly demonstrates, the defendant is utterly incapable of conforming his behavior to abide by the law.  The defendant, who is 31 years old, has been committing crimes since he was 19.  It is particularly significant that the older the defendant got the more violent and serious his crimes became.  For example, he began with a conviction for reckless endangerment and misdemeanor narcotics offenses, and graduated to felony narcotics, firearms crimes, and using fighting animals.  Of course, his committing the instant firearms offense while he was awaiting trial for another firearms offense in Philadelphia, and while he was on probation, underscores his inability to retard his recidivist criminal behavior, and increases the likelihood that he will continue to commit crimes while awaiting trial in this case if he were not detained.  It is apparent that the defendant does not abide by orders of the court.  Accordingly, there is little doubt as to what the defendant would do if he were not detained:  He would continue to threaten society with his criminal behavior.

The defendant claims that because he never has been charged with the "use of a weapon" he is not a dangerous person (Def. Br. at ¶ 10).  The government respectfully disagrees.  An individual who already has sustained firearms and narcotics convictions, such as the defendant, and who continues to possess firearms and ammunition while a fugitive, while on probation, and while on bail, has demonstrated himself to be a menace to society and a danger to its law-abiding citizens.

The defendant jokingly asked during the detention hearing that since the agents did not find a gun in the house when they arrested the defendant, should we all assume that the defendant was planning to "[s]pit the bullets out?" (Transcript at p.11). In light of the defendant's criminal history with firearms and the strength of the evidence against him, the defendant's attempt at humor is not well-received. In fact, during a search by federal authorities on August 10, 2005, of a property located at 292 Mannington-Yorktown Road, Woodstown, New Jersey – a property the defendant now would like to post as bond (Def. Br. at p.4),[10] agents discovered two firearms: a .380 caliber and a .40 caliber. The owner of the property, Kristina Latney, one of the defendant's paramours, claimed the .380 caliber firearm as her own, but specifically denied ownership of the .40 caliber gun. It is significant that the 58 live rounds of ammunition recovered from the defendant's home at 117 Dillon's Lane, Mullica Hill, New Jersey, were .40 caliber rounds. Given the defendant's relationship with Ms. Latney, and his stated interest in posting that property as bond in this case, it is likely that the .40 caliber gun recovered from 292 Mannington Yorktown is the defendant's, and that the .40 caliber bullets recovered from his bedroom were destined for that gun. Thus, the answer to the defendant's mocking question at the detention hearing on August 15, 2005, appears to be that the defendant was not planning to "spit the bullets out," but was planning to fire them from a gun.

---

[10] It is interesting that the defendant now is offering two new properties for bond, apparently conceding that "the jig is up" on the properties he tried to post during his first detention hearing. For the reasons discussed infra, however, these two new properties similarly suffer from ailments that would prohibit his posting them as bond.

### III.    THE DEFENDANT HAS NO PROPERTY TO POST AS BOND

The property located at 292 Mannington-Yorktown Road was found to contain two firearms, one of which matched the caliber of the ammunition recovered from the defendant's home when he was arrested. The second property, 118 S. 46th Street, also was searched on August 10, 2005, and found to contain two firearms. In addition, an individual named Ameen Lee Wiggins was found at 118 S. 46th Street when agents searched it. Mr. Wiggins is the registered owner and likely straw purchaser of the firearm that the defendant possessed when he was arrested by Philadelphia police in this case in October 2004. Therefore, the two properties the defendant is attempting to post as property are associated with firearms intimately connected to the defendant. Surely the defendant, a convicted felon currently facing federal firearms charges, cannot be released to either of these locations.

It is significant, moreover, that the defendant – again – is not being candid with the Court. He claims that the property located at 118 S. 46th Street is worth between $150,000 and $225,000. Records from the Board of Revision of Taxes, however, indicate that the property is worth only $22,500, significantly below the value the defendant reports and clearly not enough to secure the defendant's presence in court. The extent of the defendant's lies seems to be as limitless as his imagination and as boundless as his desire to be released from prison.

### IV.    CONCLUSION

The defendant's questions to federal law enforcement officials when he was arrested on August 10, 2005 – "How did you guys find me? Did you use a GPS device?" – as much as any of the evidence discussed above evince a clear intent by the defendant to cloak his true identity, which he has made every effort to preserve, in the automobiles he drives, the house

in which he resides, from the police who arrested him, and, of course, from the court in New Jersey that wished to sentence him.  It is apparent, therefore, that he would continue to hide from law enforcement officials, elude the authority of the court, and flee to avoid this federal prosecution if he were not detained pending trial.  For these reasons, the government respectfully requests that the defendant's appeal be denied, and that Judge Wells's order of pretrial detention remain undisturbed.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney

_____

RICHARD A. LLORET
Assistant United States Attorney

_____

MICHAEL J. BRESNICK
Assistant United States Attorney

- 14 -

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Response To Appeal Of Pretrial Order

Of Detention was served by electronic filing on the following defense counsel:

Robert F. Simone, Esq.
One Franklin Tower Boulevard, Suite 1604
Philadelphia, PA 19103


MICHAEL J. BRESNICK
Assistant United States Attorney


Date: August 29, 2005