UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 05-440 |
| ALTON COLES | : | |

**SURRICK, J.**                                                    **OCTOBER  4 , 2007**

## MEMORANDUM & ORDER

Presently before the Court is Defendant Alton Coles's Motion for Disclosure of

Information Redacted from Affidavits Supporting Applications for Interception of Wiretap

Communications (Doc. No. 307).  This Motion was addressed at a Suppression Hearing held on

August 13, 2007.  For the following reasons, Defendant's Motion will be denied.

## I.      BACKGROUND

On February 21, 2007, the grand jury returned a 194-Count Fifth Superseding Indictment

("Indictment") charging Defendant Alton Coles and twenty-one co-defendants with offenses

related to their participation in a wide-ranging drug conspiracy.  The Indictment charged Coles

with conspiracy to distribute narcotics in violation of 21 U.S.C. § 846; engaging in a continuing

criminal enterprise in violation of 21 U.S.C. § 848(a), (b); being a felon in possession of a

firearm in violation of 18 U.S.C. § 922(g)(1); possession of a firearm in furtherance of a drug

trafficking crime in violation of 18 U.S.C. § 924(c); distribution and possession with intent to

distribute narcotics in violation of 21 U.S.C. § 841(a)(1); money laundering with intent to

promote drug trafficking in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and other related offenses.

On May 19, 2005, in furtherance of an investigation of the alleged drug activities of

Defendant Coles and his co-conspirators, the Government submitted an initial application for authorization of a wiretap of Coles' cellular phone at number 267-784-3964.  (Doc. No. 483 at 2.)  Attached to the application was Special Agent Anthony M. Tropea's Affidavit In Support Of Application For The Interception of Wire Communications ("Tropea Affidavit"), which detailed Agent Tropea's professional background, provided facts gathered during the investigation that Agent Tropea deemed relevant to the Title III application, and explained the Government's need for wiretap approval.  (Doc. No. 483 at 2; *see* Tropea Aff.)  This affidavit contained references to four confidential sources identified as CS-1, CS-2, CS-3 and CS-4, who were informants cooperating with the Government's investigators.  (*See* Tropea Aff.)  The Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, authorized the wiretap on May 19, 2005, to end in thirty (30) days.  (Doc. No. 483 at 2.)  Upon Defendant Coles's arrest on August 10, 2005, all interceptions ended.  (*Id*.)

As required under Title III, the Government has produced its wiretap applications and supporting affidavits to the Defendant.  However, it has redacted certain information in those affidavits which relates to the identity of the confidential informants referenced therein. Defendant now seeks an order compelling the Government to disclose that redacted information.

## III.    LEGAL ANALYSIS

The wiretap at issue was executed by the Government pursuant to a warrant that it obtained under Title III of the Omnibus Crime Control and Safe Streets Act of 1968 §§ 2510-2522 (2000) ("Title III").  Title III governs the authorization and conduct of electronic surveillance, including wiretaps.  In enacting Title III, Congress sought to balance the dual interests of protecting individual privacy rights and empowering law enforcement to combat

organized crime.  *See United States v. Kahn*, 415 U.S. 143, 151 (1974).  As the Supreme Court instructed in *Kahn*, this "tension" must be resolved by reference to the "precise wording" of Title III.  415 U.S. at 151.

Before issuing an order authorizing a Title III wiretap, it is required that "the judge determine[ ] on the basis of the facts submitted by the applicant that . . . normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or be too dangerous." 18 U.S.C. § 2518(3)(c).  Title III's requirement that the Government demonstrate necessity is intended to ensure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.  *Kahn*, 415 U.S. at 153 n.12.  The Third Circuit has emphasized that Title III's necessity requirement does not mandate that the Government exhaust all other investigative procedures before resorting to electronic surveillance.  *United States v. Williams*, 124 F.3d 411, 418 (3d Cir.1997).  Instead, it is sufficient if there is evidence that "normal investigative techniques . . . reasonably appear to be unlikely to succeed if tried." *Id*. (quoting 18 U.S.C. § 2518(3)(c)).  To make such a showing, "[t]he government need only lay a 'factual predicate' sufficient to inform the [authorizing] judge why other methods of investigation are not sufficient." *United States v. McGlory*, 968 F.2d 309, 345 (3d Cir.1992) (quoting *United States v. Armocida*, 515 F.2d 29, 38 (3d Cir.1975)).  In determining whether this requirement has been satisfied, a court "may properly take into account affirmations which are founded in part upon the experience of specially trained agents." *Williams*, 124 F.3d at 418 (quoting *United States v. Ashley*, 876 F.2d 1069, 1072 (1st Cir.1989).  The Third Circuit has emphasized that, "[t]he government's showing is to be 'tested in a practical and commonsense fashion.'"  *McGlory*, 968 F.2d at 345 (quoting *United States v. Vento*, 533

F.2d 838, 849 (3d Cir.1976)).  Notwithstanding the pragmatic nature of this inquiry, the

necessity requirement established by statue under Title III is distinct from, and more stringent

than, the probable cause requirement for the issuing of a search or arrest warrant under the

Fourth Amendment.  *Compare* § 2518(3)(a),(b) *with* § 2518(1)(c).

The Government enjoys the right to invoke an informer's privilege in appropriate

criminal cases.  *See Pearson v. Miller*, 211 F.3d 57, 71 n.16 (3d Cir. 2000).  Courts have

traditionally protected the identity of a confidential informant who provides information to law

enforcement in order to "further[] and protect[] . . . the public interest in effective law

enforcement."  *Roviaro v. United States,* 353 U.S. 53, 59 (1957).  "The privilege recognizes the

obligation of citizens to communicate their knowledge of the commission of crimes to law-

enforcement officials and, by preserving their anonymity, encourages them to perform that

obligation." *Id.*  The privilege, however, is not absolute. "Where the disclosure of an informer's

identity, or of the contents of his communication, is relevant and helpful to the defense of an

accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-

61.  The Third Circuit has emphasized these circumstances "which require[] the informant's

identity to be released: (1) the possible testimony was highly relevant; (2) it might have

disclosed an entrapment; (3) it might have thrown doubt upon the defendant's identity; and (4)

the informer was the sole participant other than the accused, in the transaction charged." *United*

*States v. Jiles*, 658 F.2d 194, 198-99 (3d Cir.1981) (citing *McCray v. Illinois*, 386 U.S. 300, 310-

11 (1967); *Roviaro*, 353 U.S. at 63-65); *see also United States v. Brenneman*, 455 F.2d 809, 811

(3d Cir.1972) ("In order to tip the scales in favor of disclosure, there must be some indication

that access to the informer may be 'helpful to the defense of an accused' or 'essential to a fair

determination of a cause.'" (citing *Roviaro*, 353 U.S. at 60-61)).  A defendant must, however, make some showing that disclosure of the informant's identity will be helpful to his defense.  *See United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir.1983) ("[M]ere speculation as to the usefulness of the informant's testimony to the defendant is insufficient to justify disclosure of his identity."  (quoting *United States v. Estrella*, 567 F.2d 1151, 1153 (1st Cir.1977)).

Whether or not the informer's privilege may be extended by the Government to protect informants who assisted in the procurement of a Title III wiretap order is a more difficult question.  The statutory language of Title III unquestionably requires the Government to provide the Defendant with a copy of the wiretap application and order, as well as any evidence obtained therefrom, prior to any such evidence being introduced at trial.  *See* § 2518(9).  The crux of the issue is whether or not the statutory language further permits the Government to redact certain information related to confidential informants from its disclosures to the Defendant in order to protect those informants prior to trial.  Defendant here argues that § 2518(9) requires disclosure of the Tropea Affidavit in its unredacted form, including all information related to the identities of CS-1, CS-2, CS-3 and CS-4, because that section was intended to afford the Defendant ample opportunity to file a suppression motion.  (Doc. No 307 at 5 (citing *United States v. Manuszak*, 438 F.Supp. 613, 621 (E.D.PA. 1977)).)  Defendant supports his position by noting that Title III, at 18 U.S.C. § 2517(4), explicitly preserves various privileges when privileged communications are intercepted pursuant to a wiretap, but makes no mention of the informant's privilege. We have identified three cases that have squarely addressed this question.

In *United States v. Danovaro*, 877 F.2d 583 (7th Cir. 1989), the Seventh Circuit addressed this scenario and ruled that the Government was entitled to withhold certain

information from the affidavits provided to Defendants in order to protect the identities of confidential informants. *Id*. at 588. The court held that the Government may strike a middle ground when it comes to protecting confidential informants whose cooperation assists in securing Title III wiretap warrants.

> [T]he drafters may include in the affidavit facts that they think would assist the court in deciding [whether to grant a Title III warrant], then withhold from the defendant information that is both dangerous to the informant and unnecessary to sustain the warrant. That is, they may choose to defend their warrant without relying on the redacted information, just as they could forego reliance on information challenged as false and so avoid an adversary hearing into facts behind the application. Such a step is . . . not inconsistent with § 2518(9).

*Id*. The court further concluded that Title III did not statutorily abolish the informant's privilege in the context of a Title III affidavit, stating that "[s]tatutes requiring disclosure, but silent on the question of privilege, do not override customary privileges." *Id*. (citing *Upjohn Co. v. United States*, 449 U.S. 383, 397-98 (1981)). The court elected not to address, on the facts before it, the hypothetical question of whether or not the Government would be entitled to withhold information from the affidavit that was material to establishing necessity and still make use of evidence obtained via the wiretap warrant. *Id.* In reaching its decision, the court recognized the extreme risks involved for confidential informants in cases like the one at bar, noting that "in the big-time drug business, to inform is to sign one's death warrant." *Id*. at 587.

A similar conclusion was reached by the court in *United States v. Yoshimura*, 831 F.Supp. 799 (D. Hawai'i 1993). In *Yoshimura*, the court noted that the heightened requirement for obtaining a wiretap warrant under Title III was enacted by Congress "not for purposes of fulfilling probable cause requirements or protecting due process rights of suspects but of protecting the privacy expectations of citizens." *Id*. at 803. The court further noted that wiretaps

issued under Title III were likely to infringe upon the privacy of third parties and that Congress had urged courts to "consider 'the privacy of other people' and 'the propriety of limiting access . . . according to the exigencies of the situation.'" *Id*. at 804 (citing *Applications of Kansas City Star*, 666 F.2d 1168, 1176 (8th Cir. 1981)). Given these considerations, the court rejected the defendant's motion to compel the government to reveal the identities of the confidential informants referred to in its Title III disclosures. Stressing that Title III, at § 2518(8)(b), requires a showing of "good cause" to disclose or unseal any application or order for a wiretap, the court held that "a request for those documents under § 2518(9) is still subject" to the same requirement. *Id*. at 804. The court echoed *Danovaro*'s pragmatic conclusion, allowing the government to withhold information from the Title III affidavit to the extent that its disclosure would endanger confidential informants and is neither necessary to support the showing of necessity, nor helpful to the defendant in pursuing his case. *Id*. at 805.

> While § 2518(9) provides that [the defendant] has due process rights to the wiretap applications and orders, the § 2518(8)(b) "good cause" requirement makes it clear that [the defendant] is entitled only to that information that is relevant to his defense and is not protected from disclosure from some other constitutional right or privilege. Even a mandatory statutory provision is still subject to constitutional considerations.

*Id*. The court asserted that "[a]s long as the redacted information is not entered into evidence, due process concerns do not arise," and expressly concluded that the protection of the informer's privilege under *Roviaro* should extend to scenarios in which information related to confidential informants is redacted from Title III affidavits. *Id*.[1]

---

[1]We believe that the issue at bar can be disposed of by reference to the language and purpose of Title III. We therefore do not address the proposition in *Yoshimura* that the *Rovario* line of cases recognizing the customary informer's privilege should be extended to the Title III context as a matter of federal common law.

On the other hand, the court in *United States v. Arreguin*, 277 F.Supp.2d 1057 (E.D.Ca. 2003), granted a defendant's motion to compel disclosure of information redacted by the Government from a Title III wiretap. As with this case, the government, in *Arreguin*, asserted that the redaction was necessary to protect a confidential informant in an ongoing investigation. *Id.* at 1059. The *Arreguin* court rejected the reasoning in *Yoshimura* that *Roviaro*'s protections of confidential informants extended to the Title III context. *Id*. at 1060. *Arreguin* adds yet another piece to the puzzle by analyzing § 2518(8)(d) of Title III, which "provides that the judge who issues the wiretap may disclose to wiretap subjects 'such portions of wiretap applications or affidavits as the judge determines to be in the interest of justice.'" *Id.* at 1061. The court contrasts this provision with § 2518(9), which simply requires that the wiretap request, affidavit, and order be turned over to the defendant and includes no such discretionary language. *Id.* In the court's analysis:

> Worded as an unqualified requirement, it appears that § 2518(9) represents a judgment by Congress that the good cause requirement is satisfied where the government plans to use the evidence derived from a wiretap. As for *Yoshimura*'s conclusion that, for good cause, portions of applications and orders for wiretaps might nonetheless be redacted, the contention is contradicted by the plain language of the statute. Section 2518(8)(d) demonstrates that Congress knew how to tell the courts when they could decide to disclose only portions of applications or orders for wiretaps, since it provides that the judge may disclose "such portions" as were "in the interest of justice." Section 2518(9) contains no similar allowances, requiring the conclusion that when it mandates furnishing a copy of the application and order for wiretap, §2518(9) means the whole application and order.

*Id*. at 1061-62. The *Arreguin* court also rejected the Seventh Circuit's reasoning in *Danovaro*, once again certain that Congress had manifested its intentions in the text of Title III. Specifically, it accepted *Danovaro*'s proposition that "[s]tatutes requiring disclosure, but silent on the question of privilege, do not override customary privileges," *Danovaro*, 877 F.2d at 588,

but noted that Congress "took deliberate action to preserve the privilege where privileged communications were intercepted." *Arreguin*, 277 F.Supp.2d at 1062 (citing 18 U.S.C. at § 2517(4)).  The court held that because Congress made no mention of protecting the informer's privilege in this context, "the natural implication is that Congress did not intend for the government privilege to apply." *Id.*  Finally, the *Arreguin* court noted that its ruling presented the government with "a hard choice of either foregoing its proceeding against the defendant or risking the frustration of its investigation," but concluded that "this is a choice which Congress has in plain language decreed the government must make."  *Id*. at 1063.

We do not believe that this last proposition is necessarily correct.  The *Arreguin* court's analysis has the appeal of simplicity, as it confines its assessment to the statutory text and draws its conclusions based on what it regards as clear Congressional intent.  We do not agree with the Eastern District of California, however, that Congressional intent on this question is so self-evident. Moreover, we are concerned that the *Arreguin* court and the Defendant, to the extent he urges the adoption of its analysis, embraces a sort of formalistic approach to Title III that has been rejected by the Third Circuit.

While it is true that Congress did not include the sort of discretionary language in § 2518(9) that it included in § 2918(8)(d), and that it did not speak to the issue of the government's customary informer's privilege in § 2517(4), ending the statutory inquiry there is premature.  "If the language of the statute is unclear, we attempt to discern Congress' intent using the canons of statutory construction." *United States v. Cooper*, 396 F.3d 308, 310 (3d Cir. 2005).  One such canon is the Whole Act Rule, which " instructs that subsections of a statute must be interpreted in the context of the whole enactment."  *Id*. at 313 (citing 2A J. Sutherland, Statutes and

Statutory Construction § 47.02, at 139 (5th ed., Norman Singer ed.)).  The Supreme Court has

stated that:

> When "interpreting a statute, the court will not look merely to a particular clause in
> which general words may be used, but will take in connection with it the whole
> statute (or statutes on the same subject) and the objects and policy of the law, as
> indicated by its various provisions, and give to it such a construction as will carry
> into execution the will of the Legislature . . ."

*Kokoszka v. Belford*, 417 U.S. 642, 650 (1974).  The case at bar provides a useful illustration of

why it is necessary to undertake a "whole statute" analysis when such questions arise.

While it is indisputable that Congress intended to preserve the due process rights of

defendants when it drafted Title III, it is also indisputable that this was not its only purpose.  *In

re Askin*, 47 F.3d 100, 101 (4th Cir. 1995) ("Title III represents a comprehensive effort by

Congress to strike a careful balance between rights of personal privacy and the needs of law

enforcement.").  Indeed, we can identify at least two other purposes.  First, Congress certainly

also intended to provide the government with an effective investigative tool with which to

combat organized criminal activity.  Senate Judiciary Comm., Senate Report No. 1097 , 1968

U.S.Code Cong. & Admin.News, p. 2157 ("The major purpose of title III is to combat organized

crime").  Secondly, as the *Yoshimura* court notes, Congress was also pointedly concerned with

the privacy rights of third parties who might be affected by the execution of wiretaps. *Matter of

New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) ("Certainly, the privacy interests of

innocent third parties as well as those of defendants that may be harmed by disclosure of the

Title III material should weigh heavily in a court's balancing equation in determining what

portions of motion papers in question should remain sealed or should be redacted.").  That the

drafters of Title III may well have had the privacy interests of individuals on the receiving end of

targeted phone calls in mind is not dispositive for our purposes.  When the government exercises its powers pursuant to a Title III wiretap order, because of the personal risks involved, a confidential informant identified in the underlying affidavit recognizes a privacy interest just as great, if not greater than, third parties whose communications are directly intercepted by this uniquely intrusive tool.

Were we to follow the *Arreguin* court in this case, and offer the Government a choice of disclosing all of the redacted information contained in the Tropea affidavit or relying upon none of the evidence procured from the wiretaps used in their investigation, we would certainly vindicate one Congressional purpose, due process, at the expense of two others, effective crime fighting and third party privacy.  This seems too severe a conclusion to draw from the textual peculiarities discussed in *Arreguin*.  This is especially true when the path charted by *Danovaro* and *Yoshimura* seems well suited to maintain the balance struck by Congress between all three goals.  If the Government does not rely on the redacted information as evidence essential to its establishment of necessity under Title III, and as long as they do not intend to introduce the redacted information itself into evidence, we are hard pressed to conclude that Defendant's due process rights would be impacted to the point where the countervailing considerations addressed by Congress should be subjugated.  We agree with the court in *Danovaro*, however, that, were the redacted information essential for the Government's demonstration of necessity, the Defendant's due process rights might be significantly implicated to the point where a different balance between the three interests would need to be struck.  *See Danovaro*, 877 F.2d at 588.

The Government's position in this matter places them in the same position as the government officials in both *Donovaro* and *Yoshimura*.  The evidence they seek to redact was

not essential to the establishment of necessity when the government sought the wiretap warrant. (Doc. No. 482 at 8-10.)  In this case, the four confidential sources at issue are referenced at various points in a lengthy section explaining why probable cause existed which would support the issuance of a wiretap warrant.  (Tropea Aff. ¶¶ 18–71.)  Throughout this section, Agent Tropea explains in extensive detail how he and his colleagues independently corroborated the information they received from the confidential sources using traditional investigative methods. (*See*, *e.g.*, *id*. at  ¶¶ 21, 37, 40, 44.)  It is evident from the affidavit that the Government's showing of probable cause did not rest upon information provided by the confidential informants, but upon the police work performed by the investigating authorities.  Similarly, the section of the affidavit that sets forth the Government's necessity arguments draws its conclusions based upon the evidence derived from traditional investigative methods undertaken prior to the application, and in no way relies directly upon the representations of the confidential informants.  (*See id.* at ¶¶ 72-85.)  Finally, the redactions made by the Government in the version of the affidavit it produced to the Defendant are minimal in nature, entailing only a total of four sentences.  (*See id.* at ¶¶ 26-27.)  We have reviewed the sentences *in camera* and conclude, in light of the extensive averments in the Tropea affidavit, that they are in no way essential to the Government's showing of either probable cause or necessity.

On the other hand, the Defendant has not made a colorable argument that the information the Government seeks to withhold was essential to either of these showings, nor would it be helpful to his defense.  (*See* Doc. No. 307).  Rather, the thrust of Defendant's argument is the assertion that the because *Arreguin* court mandated the disclosure of confidential informants, this Court is similarly compelled to do so.  *Id*.

As discussed above, however, the question here is not a simple one, and certainly not so simple as the Defendant contends.  This leads to our final disagreement with the *Arreguin* court's analysis: it fails to consider the practical implications of its conclusion.  As the *Danovaro* court noted, confidential informants in large scale federal drug investigations are, by definition, individuals in serious danger. *Danovaro*, 877 F.2d at 587-88.  In choosing to cooperate with the government, they place their personal safety and lives in grave risk.  *See United States v. Bell*, 113 F.3d 1345 (3d Cir. 1997) (upholding conviction of defendant for murdering of a witness in a drug trafficking trial).[2]  As discussed above, their privacy interests in a Title III context are potentially more compelling than even those of individuals, protected under § 2517(4), whose communications are intercepted pursuant to wiretaps.  It is all too apparent that advances in information technology have amplified the dangers faced by informants and witnesses, and increased the speed and ease with which they can be identified and intimidated.[3]  In fact, this Court has only recently adopted rules addressing this very real problem.[4]  In discussing the

---

[2]In this district, recent events have illustrated the sort of danger that cooperating witnesses and informants face.  *See* Julie Shaw, "Murderer of Witness Gets Life in Prison," *Phila. Inquirer*, Dec. 15, 2006, at B01; George Anastasia and Maria Panaritis, "Guns, Bodies - and Attitude" *Phila. Inquirer*, Oct. 14, 2004, at B01.

[3]*See* Emilie Lounsberry, "Stoking A Culture Of Fear For Witnesses," *Phila. Inquirer*, Jul. 26, 2007 at A01 (discussing the impact on federal investigations and prosecutions of the website www.whosarat.com, which bills itself as "the largest online database of agents and informants").

[4]On July 9, 2007, in response to the emergence of the internet as a tool to intimidate informants and witnesses, the United States District Court for the Eastern District of Pennsylvania adopted a new protocol governing pleadings and orders in criminal cases.  *See* Notice, July 9, 2007, United States District Court for the Eastern District of Pennsylvania (available at http://www.paed.uscourts.gov/documents/notices/notcrpro.pdf). Under the protocol, internet access to documents and orders related to pleas and sentencing will be restricted in order to protect cooperating informants, witnesses and defendants.  *Id.*; *see also* Shannon P. Duffy, "Courts Move To Protect Informants From Web Site," *The Legal Intelligencer*, Jul. 17, 2007.

necessity requirement of Title III, the Third Circuit has admonished that courts should not take an overly formalistic approach in performing their analysis, but rather should proceed in a "commonsense" fashion.  *Vento*, 533 F.2d at 849.  We think this counsel is also useful in assessing the question before us.  To construe Title III in a manner that throws several competing interests out of balance, and favors one at the expense of others, would open the door to significant tangible dangers that cannot be ignored.  Absent a clear Congressional directive to do so, this Court must not alter the balance between the competing goals of Title III, but rather must seek to reinforce it.

Accordingly, the Court will deny Defendant's Motion for Disclosure of Information Redacted from Affidavits Supporting Applications for Interception of Wiretap Communications.

An appropriate order follows.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA           :
                                   :        CRIMINAL ACTION
          v.                       :
                                   :        NO. 05-440
ALTON COLES                        :


## ORDER

AND NOW, this 4th day of October, 2007, upon consideration of Defendant Alton

Coles's Motion for Disclosure of Information Redacted from Affidavits Supporting Applications

for Interception of Wiretap Communications (Doc. No. 307), and all documents submitted in

support thereof and in opposition thereto, it is ORDERED that the Motion is DENIED.

IT IS SO ORDERED.


                                        BY THE COURT:


                                        _____
                                        R. Barclay Surrick, Judge