UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Philadelphia, PA |
| | ) | CR-05-440 |
| vs. | ) | |
| | ) | February 27, 2008 |
| ALTON COLES a/k/a NASEEM COLES, | ) | |
| et al., | ) | |
| | ) | |
| Defendant. | ) | |

TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE R. BARCLAY SURRICK
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Government: | MICHAEL J. BRESNICK, ESQUIRE<br>RICHARD A. LLORET, ESQUIRE<br>U.S. ATTORNEY'S OFFICE<br>615 Chestnut Street, Suite 1250<br>Philadelphia, PA  19106 |
| For the Defendant:<br>Alton Coles | CHRISTOPHER D. WARREN, ESQUIRE<br>Law Office of Christopher Warren<br>1500 Walnut Street<br>Philadelphia, PA 19102 |
| For the Defendant:<br>Timothy Baukman | JACK J. McMAHON, JR., ESQUIRE<br>Law Office of Jack McMahon<br>1500 Walnut Street, Suite 900<br>Philadelphia, PA  19102 |
| Audio Operator | INNA GOLDSHTEYN |
| Transcribed by: | DIANA DOMAN TRANSCRIBING<br>P.O. Box 129<br>Gibbsboro, New Jersey 08026-129<br>(856) 435-7172<br>FAX:  (856) 435-7124<br>Email:  Dianadoman@comcast.net |

Proceedings recorded by electronic sound recording; transcript
produced by transcription service



(Appearances continued)

For the Defendant:                  LAURENCE HARMELIN, ESQUIRE
Monique Pullins                     P.O.  Box 3574
                                    Westchester, PA   19381


For the Defendant:                  RONALD A. SMITH, ESQUIRE
Asya Richardson                     Ronald A. Smith and Associates
                                    1617 JFK Boulevard, Suite 1240
                                    Philadelphia, PA   19103


For the Defendant:                  PAUL J. HETZNECKER, ESQUIRE
Thais Thompson                      1420 Walnut Street, Suite 911
                                    Philadelphia, PA   19102


For the Defendant:                  RONALD THOMPSON, ESQUIRE
James Morris                        3002 Lincoln Drive
                                    Suite J
                                    Marlton, NJ 08053

                                    WAYNE POWELL, ESQUIRE
                                    811 Church Road
                                    101 Parragon Building
                                    Cherry Hill, NJ 08002

3

$$\underline{I} \ \underline{N} \ \underline{D} \ \underline{E} \ \underline{X}$$

<u>PAGE</u>

Jury question #1                    4

Jury question #2                    14

Colloquy                                              4

(Court in Session)

THE COURT:  Good morning.

MR. MCMAHON:  Good morning, Your Honor.

MR. WARREN:  Good morning, Your Honor.

MR. LLORET:  Good morning, Your Honor.

THE COURT:  Okay.  Have a seat, counsel.  We've received a couple of requests from the jury.  First of all, they've asked for exhibit 750D, and I think that's the chart of the Mullica Hill transaction, is that correct?

MR. LLORET:  That's correct, Your Honor, and that's -- that's right over here.

THE COURT:  Any problem with sending that out?

MR. WARREN:  No, Judge.  That was admitted into evidence.

COUNSEL:  No, Your Honor.

THE COURT:  All right.  They have requested the four boxes of Take Down financial records.  We can send them out.  Everybody agreed yesterday.

MR. LLORET:  Yes, Your Honor, and I just want to make clear, because I think they're using the Take Downs as -- as a kind of shorthand for the four boxes of documents that were referred to by the IRS agent on the stand.  Those boxes contain Take Down records.  They contain records from all sorts of different sources.  They sort of constitute the sum of the 700 series, and Springfield -- those Springfield documents that

were consulted and in evidence, but I don't think that that's a cause for a problem with them, but I just don't want them to be unclear about those boxes are a lot more than Take Down records.

THE COURT:  Okay.

MR. WARREN:  That's fine.  I think it's whatever -- they want to see whatever it was that was reviewed by Agent Armstrong in the course of the calculations he made.  I stand up there and argued that the -- that the records were not IBM, and I think they want to see whether or not.

MR. LLORET:  Within those four boxes, there are records that are Take Down records, and my inclination at this point, Your Honor, is to give them the boxes.  If they want to narrow it down after sort of consulting with that and say well, we really didn't want to look -- we want to look at X, can you help us identify which ones, we can address that question.

MR. WARREN:  That's fine, Judge.

THE COURT:  Any problem?

MR. MCMAHON:  That's fine.

COUNSEL:  That sounds good to me.

THE COURT:  All right.  Defendants agree.  They would like to have a set of the transcript books so that they can make reference to the times and dates that the calls were made.

MR. WARREN:  Those were not admitted into evidence, Judge, but I -- Mr. Lloret and I have spoken.  He believes that

he can modify the exhibit we gave them back there, the index of the calls, and just add the times of the calls on there.  He says it will take him about an hour or two.  I wouldn't have a problem with that.

MR. LLORET:  Your Honor, I think we can do that, because that was in evidence.  The agent --

MR. WARREN:  Right.

MR. LLORET:  -- testified.  So it seems to me a simple way to try and solve that and to accommodate Mr. Warren's objection, which I think we dealt with yesterday --

THE COURT:  Yes.

MR. LLORET:  -- with the transcript, would be to do something along those lines, and I --

THE COURT:  Well, if you can do it, that would solve the problem.

MR. WARREN:  Right.

MR. LLORET:  We will -- we'll make every effort to get that done promptly.

MR. WARREN:  Agent Ricko did testify to that.  So the only thing we're doing is preventing a readback of very tedious and laborious testimony to identify times that we can stick on a chart.

MR. SMITH:  Chris --

MR. WARREN:  Yes.

MR. SMITH:  -- the one phone call that you raised during your -- your argument -- excuse me -- cross-examination of my client, was that an attached?

MR. WARREN:  No.  That was a defense exhibit, and they -- that's on the list of defense exhibits that was sent back there to them, and as yet, they have not requested it. So --

MR. SMITH:  The only problem I have with that, Your Honor, I have no problem with the transcripts going out, but I believe in all --

MR. WARREN:  No.  No.

THE COURT:  Well, not going to send --

MR. LLORET:  We're not talking about transcripts.

THE COURT:  We're not going to send transcripts out.

MR. SMITH:  Okay.

THE COURT:  We're -- the Government is going to make up a list of dates and times.

MR. SMITH:  That's fine.

MR. LLORET:  Yes.

THE COURT:  Okay?  All right.  Now, we're back to the question that they asked yesterday about money laundering. What I intend to do, counsel, is to tell them that the -- the answer is that the financial transaction, that is, the buying of the house with the proceeds of unlawful activity, was designed in whole or in part to conceal or disguise the nature,

the source, the ownership of the proceeds of the unlawful activity.

I intend to tell them that it need not be the sole intent. It's in whole or in part.

MR. WARREN: Okay. That's a correct reading of the law.

MR. LLORET: I think --

MR. MCMAHON: Yeah. I agree. I mean -- it seems -- as to their question, Your Honor, it seems like it's the -- in their disjunctive, that it's the second one.

THE COURT: It's the second answer. Yeah, and I will --

MR. MCMAHON: Right.

MR. WARREN: Except that sole is --

THE COURT: And I will tell them that too.

MR. MCMAHON: Right.

MR. WARREN: Except sole is -- it seems to me somebody wonders whether or not if you have drug proceeds and you simply buy something, can that be money laundering is what they're asking.

MR. MCMAHON: We would agree it's the second one.

MR. WARREN: It's not sole. In fact, sole is misspelled there.

THE COURT: Yes, it is.

MR. LLORET: Your Honor --

Colloquy                                                9

MR. MCMAHON:  Maybe it's not.  Maybe they feel it's got soul.

COUNSEL:  I concur with Mr. McMahon.

MR. MCMAHON:  You have to -- you have to spend the money with soul.

THE COURT:  All right.

MR. LLORET:  Your Honor, if I may?

THE COURT:  Mr. Lloret?

MR. LLORET:  I'll just comment, because I think that the answer that the Court proposes is the correct one under the circumstances.  I do think that there is some ambiguity, and it's just impossible for me to determine exactly what the ambiguity is about what they're wrestling with.  I think the safest course is to respond sort of as narrowly as possible and as precisely as possible to the issues raised.

I will note for the record I don't agree that in all cases it is impossible for the first part of their question to be money laundering, but it would depend upon various things that are just not revealed through their question.  So I'll leave that for another question.

THE COURT:  All right.

MR. LLORET:  I think at this point, the simplest thing is to answer as the Court suggested.  We will see if they sort of elaborate on what their confusion may be.

THE COURT:  All right.

MR. LLORET:  Thank you.

THE COURT:  Okay, Mr. Finney.  You want to bring the jurors in?

(Pause)

THE CLERK:  Please rise.

(Jury in)

THE COURT:  Okay.  Have a seat, ladies and gentlemen. Members of the jury, you have sent out two notes, two requests. Let me go through them.

The first says, "Can we please see exhibit 750D."  We will send exhibit 750D out with you.  Counsel agree that you may see that.

With regard to the boxes of Take Down financial records, the four boxes that you've requested, we will send the four boxes of records out with you.  Those boxes include records from -- of Take Down, but they also include other materials, but we will send the four boxes out for you to review.  All right?

With regard to the transcripts, you've asked for a set of transcripts because you want the times and the dates of the calls.  Ladies and gentlemen, we cannot send the -- a transcript book out with you, but what we will do is -- and it will probably take a little while, but we will make a list of the times and dates of the calls, and we will send that list out with you.  It's probably going to take an hour or more to

do that, but we will get that completed and send it out.

Now, you have asked with regard to the money laundering, count -- the element -- element 4.  You made inquiry about that yesterday.  You have made another inquiry today.  You have asked --

"Is the use of funds gained through the sale of cocaine for the purpose of buying a desired living quarters the issue or is it or were they buying the house with the sole intent of concealing or disguising unlawful activity [and then parens] in whole or in part.  We need to know which of these questions it's asking."

Ladies and gentlemen, the answer to that question is this.  The financial transaction, that is, the buying of the house with the proceeds from unlawful activity was designed in whole or in part to conceal or disguise the nature, the source, or the ownership of the proceeds of the unlawful activity.  It need not be the sole intent if it is in whole or in part the purpose.

So that essentially answers your question I hope.  It essentially is number 2 that you wrote down.  Okay?  Ladies and gentlemen, we're going to send you back out.  If the answer that I just gave you is not clear, write down your inquiry, and we will attempt to address it again, and any other requests that you have write down, and we will try to accommodate.  All

Colloquy                                    12

right?

Mr. Finney, will you take the jury out?

THE CLERK:  Please rise.

(Jury out)

THE COURT:  Okay.  Mr. Lloret, when you get that list made up, will you let counsel see it, and if there is no objection, then Mr. Finney can just take it into the jury room and give it to the jurors.

MR. LLORET:  I'll do so, Your Honor.  In an hour or so, I don't know exactly where counsel will be, but I can certainly email it.  You're going to be here?  Okay.  I'll do that.  Then I'll come back.

THE COURT:  All right.

MR. LLORET:  Thank you.

THE COURT:  Anything further?

MR. LLORET:  Nothing further, Your Honor.

MR. WARREN:  No, sir.

MR. MCMAHON:  Judge, as -- what time was it you were going to let them go?  12:15?

MR. WARREN:  12:15.

THE COURT:  Yeah.  They -- we'll let them go at 12:15.

MR. LLORET:  Great.

MR. MCMAHON:  You want us back again, same -- same --

THE COURT:  Yeah.  We have to --

Colloquy                                                    13

MR. MCMAHON:  Okay.

THE COURT:  -- have you back here.

MR. MCMAHON:  Fine.  I just wanted --

THE COURT:  Okay.

(Recess)

THE COURT:  Okay.  Mr. Finney, you want to bring the jurors in?

MR. LLORET:  Your Honor, there is one issue that we'd like to raise with you after the jury has been dismissed. Mr. Hetznecker and I have discussed it.  It will be brief, but we wanted to raise it with you after the jury has been dismissed.

THE COURT:  All right.

(Pause)

THE CLERK:  Please rise.

(Jury in)

THE COURT:  Okay.  Have a seat, ladies and gentlemen. All right.  It's 12:15, and as we discussed yesterday, we're going to recess for the day.

Again, I want to caution you as I did yesterday.  We don't want you talking to anybody about this case.  We don't want anyone talking to you.  We don't want you discussing the case among yourselves until all of you are back in the jury room all together.  Then you can begin your deliberations tomorrow.

Don't read anything about the case.  Don't listen to anything about the case, and the alternate jurors, don't you discuss the case either among yourselves or with anyone else.

Okay.  I'm going to ask you to be back tomorrow at nine o'clock, and when you're all assembled in the jury room, when the 12 of you are there, then you can begin your deliberations.  All right?

I have received a question from you.  I will discuss it with counsel, and we will respond tomorrow morning.  Okay. Mr. Finney, will you take the jury out?

THE CLERK:  Please rise.

(Jury out)

THE COURT:  Okay.  Have a seat, counsel.  I received a question from the jury.  It said can we -- it says, "Can we have any grand jury testimony that was admitted for Thais Thompson?"  I don't know whether that's what you and Mr. Hetznecker wanted to discuss with the Court, Mr. Lloret, but we talked about this yesterday.  Is there any problem with the jury getting the testimony that they heard from the grand jury?

MR. LLORET:  I don't know what Mr. Hetznecker's view would be.  In my view, it would be appropriate to give them the grand jury testimony.  I don't know whether counsel wants it read back to them or we send it out in tabs.

I will say, Your Honor, the issue, this very sort of

narrow issue that I wanted to address to the Court which just came to my attention is the indictment, Count 191, has language obviously from the grand jury quoted.  The issue that I -- that, frankly, Mr. Bresnick caught sort of tidying up tabs and things like that is there appears to have been an over redaction, and one of -- the tab that should have had part of this language or all of this language only has part of it, and let me make clear for the record what part is in the tab, what tab we're talking about, and what is not in.

The -- the language, if you'll note, Your Honor, in 191 starts with, "Now, the fact is that Mr. Morris told the agents it was his money lying around the house, isn't that true", and goes on  There are two underlined answers that are alleged as perjurious.  One is an answer that says, "Nothing there is if it didn't come out of his pocket", what I'll refer to as the first underlined line, and the second one is the answer, "No, it was not", in answer to the question, "You're saying that was not his money."

In looking at tab 181, which is the relevant tab in this case, Your Honor, only that portion of this colloquy that starts with the question, "No.  I am asking about the cash lying around your house where you live.  You're saying that that was not his money", and the answer, "No, it was not." Only that portion is included in the tab that was actually read to the jury.  The grand jury transcript as a whole was marked

Colloquy                                                    16

in and received into evidence, but as you'll recall, only certain sections were read.

So what we have is -- and I just -- factually, I'm not sure how the best way is to deal with this. I've just mentioned to Mr. Hetznecker that we caught this. I think that he wants to have consultation with his client, and we will have to have additional conversation I think with Mr. Hetznecker before we can sort of come back to the Court if there is a real dispute about how it needs to be dealt. Obviously, the Court will have to make a call.

But I just wanted to raise that now, because we caught that, and I think Mr. Hetznecker obviously will want to consult and have -- certainly have an opinion on how to deal with it best.

THE COURT: All right. Mr. Hetznecker, you can discuss the matter with Mr. Lloret, determine whether you can find a common meeting ground. If you can't, then I'll address the issue tomorrow morning.

MR. HETZNECKER: That's fine. That's fine.

THE COURT: Okay? Also, at the same time, discuss the inquiry that was made by the jury concerning what testimony they can get.

MR. LLORET: We'll do, Your Honor. Thank you.

MR. HETZNECKER: Well, Your Honor, the only thing I would say for the record regarding the jury question, that I

think it comes down to what's admissible, and also, what's feasible. Certainly, the tabs that -- the books as we have treated them throughout the trial are not of record. What is of record are the tabs that were read into the record for the use of Agent Horay.

I think there is one of two alternatives. One is to have it read back from the way it was transcribed originally. I think that's the only logical way to do it. Otherwise, we're giving them tabs which they've asked for which are not of record. They've asked for the other calls, and I would want at this point to remain consistent with the Court's rulings, that although it may be easier and may facilitate things by giving them the tabs, they're not of record and they're not admitted. What is admitted is the actual testimony itself.

So that's going to be my position with respect to reading back the transcripts. I think they should get the entire thing read back to them that was read to them so that it is in context, so they can view it in context, but I don't think handing them -- and I don't know what Mr. Lloret's position is, but I don't think handing them -- or Mr. Bresnick's position -- hanging them tabs in the booklets that was prepared for their aid during the course of that is appropriate nor do I think it's proper or admissible at this point given the Court's rulings on the others. So that's my position.

MR. BRESNICK:  Your Honor, just responding to Mr. Hetznecker, I've already redacted -- I have the full grand jury transcript, not the -- not what we've seen in court with the tabs, but the actual grand jury transcript that's prepared by the court reporter and submitted to the Government.  I have redacted that entirely to include only those portions that were read in evidence in court.  I've taken out pages entirely that had -- were not read at all.  To the extent that a page had some testimony read into evidence and others that were not, I redacted the portions that were not read into evidence.  I don't see why that couldn't just go back to the jury and just have them review that.

THE COURT:  Well, show Mr. Hetznecker --

MR. BRESNICK:  It's downstairs.

THE COURT:  -- what it is you have --

MR. BRESNICK:  Yeah.

THE COURT:  -- and the two of you talk, and then we'll address the matter tomorrow if there is disagreement on how to deal with it.

MR. HETZNECKER:  That's fine.

MR. LLORET:  Very well, Your Honor.

MR. BRESNICK:  Okay.

THE COURT:  Okay?  Anything else, counsel?

MR. WARREN:  No, Your Honor.

THE COURT:  Okay.  Tomorrow be on 15 minute call.

Mr. -- did you have something --

MR. WARREN:  No.  I was just trying to figure out what time you wanted us here, Judge.

THE COURT:  You're on 15-minute call.  Mr. Harmelin, you don't need to get here until ten o'clock.  The nonincarcerated defendants don't have to get here until ten o'clock, and we'll let the jury deliberate and see what happens.

MR. LLORET:  Very well.  Thank you, Your Honor.

MR. MCMAHON:  Thank you, Your Honor.

(Court Adjourned)

* * * * *

C E R T I F I C A T I O N

I, Maureen Emmons, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_Maureen Emmons_                    Date: 04/21/08

MAUREEN EMMONS

DIANA DOMAN TRANSCRIBING