IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : CRIMINAL ACTION
v. :
TERRY WALKER : NO. 05-440-11

**SURRICK, J.** **SEPTEMBER 23, 2008**

**MEMORANDUM & ORDER**

Presently before the Court is Defendant Terry Walker's Motion to Suppress Physical Evidence, *Nunc Pro Tunc*, (Doc. No. 908). For the following reasons, Defendant's Motion will be denied.

## I. BACKGROUND

The Fifth Superseding Indictment charges Defendant Terry Walker with conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 (Count 1); distribution and possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1) (Counts 57, 157, 178); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count 179).

There are a total of twenty-two defendants charged in the Indictment. Six of the twenty-two defendants were tried in the first phase of the case in a trial which ran from January 17 to March 5, 2008. Walker and five co-defendants remain to be tried. The trial is currently scheduled to begin on November 10, 2008.

## II. FINDINGS OF FACT

On or about April 14, 2002, Detective Chris Marano responded to a call over the police radio regarding a shooting near the Philadelphia Zoo. (Trial Tr. 258-59, Jan. 22, 2008; Hr'g Tr. 50, Aug. 5, 2008.) When he arrived at the location, he found uniformed police removing two men from a maroon-colored Buick. Both men had been shot. They were taken to the Hospital of the University of Pennsylvania. (Trial Tr. 259.) One of the individuals died. (*Id.* at 352.) After interviewing several witnesses and the surviving victim, the detectives learned that a silver Mercedes CLK had been involved in the shooting. (*Id.*)

Later in the day, Detective Marano and his partner, Detective Joseph McDermott, were alerted to the admission of a shooting victim to the Fitzgerald Mercy Hospital. (*Id.* at 260.) They went to Fitzgerald-Mercy and found a male who identified himself as "Dante Tucker" but who was later identified as Randall Austin. (*Id.* at 261, 264.) They spoke to "Tucker," who had been shot in the hand, and they recovered a gun envelope with a label identifying it as an envelope for a Glock semi-automatic pistol. (*Id.* at 262-63.) The envelope was soaked with blood. (*Id.* at 263.) A trace of the serial number on the envelope revealed that the Glock once contained in the envelope had been recovered from Randall Austin when he was arrested in February 2002. (*Id.* at 263-64.)

On April 15, 2002, around 10 P.M., this homicide investigation led the Detectives to 2636 Daphne Road in Philadelphia. (*Id.* at 265; Hr'g Tr. 4, 49-50.) At this point, Randall Austin was the prime suspect in the homicide. (Hr'g Tr. 51.) The primary purpose for going to 2636 Daphne Road was to locate the silver Mercedes that the police believed had been used in the homicide. (*Id.* at 50-51.)

While walking around the outside of the property, the Detectives saw that a silver Mercedes CLK was parked in the garage located on the ground floor in the rear of 2636 Daphne Road. (*Id.* at 5, 44.) Parked in the driveway immediately outside the garage was a silver Infinity Q45. (*Id.* at 4-5, 46.) On the floor of the garage, Detective Marano saw the floor mats from the Mercedes and cleaning supplies. (*Id.* at 6.) It appeared as though someone had been trying to clean the floor mats. (*Id.*) The Detectives observed what they believed to be the boots of a person crouching behind the Mercedes. (*Id.* at 5, 44.) Detective Marano, with gun drawn, gave a verbal command to the person whom he believed to be hiding behind the Mercedes. (*Id.*) At the same time, Detective McDermott went to the front of the property and stood in the shadows. (*Id.*) Detective McDermott also notified homicide regarding the discovery of the car. (*Id.* at 5, 45.) While at the front of the property, Detective McDermott saw a light and movement through the windows of the first floor of 2636 Daphne Road. (*Id.* at 55)

As Detective McDermott stood in the driveway, he saw a male, later identified as Defendant Terry Walker, exit the front of 2636 Daphne Road and walk along the side of the property toward Detective Marano. (*Id.* at 45.) As Walker moved along the side of the property he was hugging the wall. (*Id.*; *see also* Trial Tr. 273.) Detective Marano had his back to Defendant. (Hr'g Tr. 45.) Detective McDermott then approached Defendant, identified himself as a police officer, drew his weapon, and grabbed Defendant by the shoulder. (*Id.*) Defendant swung his elbow back, and Detective McDermott warned Defendant not to move. (*Id.*) At this time, Detective Marano joined Detective McDermott and the two placed handcuffs on Defendant and put him in the back of their police car. (*Id.* at 45-46.) The Detectives returned to secure the garage only to discover that the boots that Detective Marano had seen were actually empty and

that there was no one hiding in the garage. (*Id.* at 46.)

At about this time, the car alarm system on the silver Infiniti started going off intermittently. (*Id.* at 7, 46.) The Detectives observed Defendant moving around in the back of the police vehicle and they could hear him yelling. (*Id.* at 7-8, 46.) Detective Marano realized that Defendant had the keys to the Infiniti, was causing the car alarm to go off and was trying to warn someone inside the property of the police presence. (*Id.* at 8, 12-14) Detective Marano went to the police car and took the keys to the Infiniti from Defendant. (*Id.* at 8, 47.)

At this point, Philadelphia Police Officer Duan White arrived on the scene with a police wagon to assist the Detectives. (*Id.* at 73-74.) Officer White took Defendant out of the police car and put him in the police wagon. (*Id.* at 75.) Before doing so, however, Defendant was patted down as a safety precaution, and his pockets were emptied. (*Id.*) Two additional sets of keys were taken from Defendant. (*Id.* at 79.) One set of keys was later used to open the door to 2636 Daphne Road. (*Id.*) The officers asked Defendant his name and address. (*Id.* at 77.) Defendant directed the officers to the trunk of the Infiniti in which there was documentation revealing that his name was Terry Walker and that his address was 118 S. 46th St., Philadelphia, PA. (*Id.* at 68.)

Since the detectives believed that Defendant had been attempting to send a warning to someone inside 2636 Daphne Road, they quickly checked to see if there was anyone inside the house. (*Id.* at 12-14.) They used the keys retrieved from Defendant to enter the property but they found no one inside. (*Id.* at 38.) After the detectives secured the property Defendant was released. (*Id.* at 13, 72.) He was not charged with any crime. (*Id.*) When Defendant was released the detectives tried to return the keys to him but Defendant told them that the keys were

not his and he refused to take them. (*Id.* at 13.)

## III. DISCUSSION

Defendant has moved to suppress the keys as the fruit of an illegal search and seizure. The Government responds that the search for and seizure of the keys was reasonable under *Terry v. Ohio*, 392 U.S. 1 (1968), and that the Motion should be denied.[1]

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States. v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry*, 392 U.S. at 9); *United States v. Cortez*, 449 U.S. 411, 417 (1981). However, in *Terry*, the Supreme Court carved out an exception, holding that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating

---

[1] The Government also argues that Defendant's motion is untimely under Federal Rule of Criminal Procedure 12(b)(3), which requires that certain motions, including motions to suppress, be raised before trial. The Court may set a deadline for the parties to make pretrial motions under Rule 12(c) and a party waives all Rule 12(b)(3) defenses, objections, or requests not raised before the deadline absent a showing of good cause under Rule 12(e). Fed. R. Crim. P. 12.

Defendant responds he was not aware that the Government had the keys in question in its possession as the keys were not listed on any of the property receipts turned over to defense counsel during discovery. (Hr'g Tr. 86.) The Government argues that defense counsel was on notice concerning the Government's possession of the keys. The Government points to the fact that the keys were taken from Defendant himself so Defendant certainly had to know that the keys were seized and not given back. The Government also argues that the keys are mentioned in the transcripts of the state count proceedings in this matter and that those transcripts have been available for many months. (Hr'g Tr. 100-02.)

The discovery in this matter is voluminous. There were thousands of pages of documents for counsel to review. Nothwithstanding the fact that discovery was to be completed by June 1, 2007, and suppression hearings were held in August, 2007, we will not deny Defendant's Motion as untimely. Trial is scheduled to begin on November 10, 2008. This Motion was filed in sufficient time for the Court to have a hearing on the issues raised in the Motion. We will deal with the issues on the merits.

criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22. The Court determined that a police officer can make an investigatory stop of an individual and conduct a frisk for weapons in order to ensure the officer's safety. *Id.* at 23–24. The frisk is considered a permissible invasion when the officer can "point to specific articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27. "Because the 'balance between the public interest and the individual's right to personal security' tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *Arvizu*, 534 U.S. at 273 (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)); *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30; referencing also *Cortez*, 449 U.S. at 417 ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.")).

"When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing. *Arvizu*, 534 U.S. at 273 (citing *Cortez*, 449 U.S. at 417-18). The standard "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them" in a given circumstance. *Arvizu*, 534 U.S. at 273.

In this case, Detectives Marano and McDermott were involved in the investigation of a violent homicide. They found the car that they believed had been used in the homicide in the garage beneath 2636 Daphne Road. They saw what they believed to be the murder suspect crouching behind the car, and they knew that the suspect had been armed. Defendant exited the front door of the residence at 2636 Daphne Road and started walking directly towards Detective Marano, hugging the wall as he moved. Detective McDermott reasonably believed that Defendant might be sneaking up on Detective Marano whose back was to Defendant. The detectives reasonably believed that there was criminal activity afoot and that there was a potential threat to their safety. The stop of Defendant after he came out of 2636 Daphne Road and as he moved along the side of the building toward Detective Marano was perfectly reasonable. The pat-down and brief detention of Defendant in the police car as the Detectives continued this investigation was also reasonable under the circumstances.

Defendant objects that no contraband and no weapons were found on him during the pat-down frisk of his person, but that the detectives arrested or seized him anyway, subjecting him to custodial detention without probable cause. (Doc. No. 908, Brief at unnumbered 3.) Defendant cites the case of *United States v. Mendenhall*, 446 U.S. 544 (1980), in support of the proposition that his detention went beyond a *Terry* stop and ripened into custody without probable cause because he was not free to leave. (Hr'g Tr. 89-90.) It is certainly the case that Defendant was not free to leave after the initial *Terry* stop. Nevertheless, we are satisfied that Defendant's detention was not a warrantless arrest without probable cause, nor did it violate Defendant's Fourth Amendment rights. *See United States v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995) (noting that a *Terry* stop does not become an arrest simply because a suspect is not free to

leave as "in neither a stop nor an arrest is a suspect free to leave"); *see also United States v. Leal*, 235 Fed. Appx. 937, 941 (3d Cir. 2007) (upholding a detention in which the suspect was not free to leave until a canine unit arrived to complete the investigation). Rather the detention was part of a routine *Terry* stop, intended only to give the Detectives an opportunity to continue their investigation, and to dispel suspicion that Defendant may be involved in the matter that they were investigating. Moreover, although *Terry* stops must be brief, "there is 'no rigid time limitation on *Terry* stops.'" *Leal*, 235 Fed. Appx. at 941 (citing *United States v. Sharpe*, 470 U.S. 675, 685 (1985)).[2] Although Defendant was the subject of a seizure in that he was not free to leave, the seizure was not unreasonable under the Fourth Amendment.

"[B]right-line rules do not govern the permissible scope of an investigative detention." *United States v. Copening*, 506 F.3d 1241, 1248 (10th Cir. 2007). "[S]ome seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity." *Michigan v. Summers*, 452 U.S. 692, 699-700 (1981). In addition, "police officers need not take unnecessary risks in the line of duty, [and] they may take precautionary measures that are reasonably necessary to safeguard their personal safety, and to 'maintain the status quo,' during a *Terry* stop." *Copening*, 506 F.3d at 1248 (citing *United States v. Shareef*, 100 F.3d 1491, 1495 (10th Cir. 1996) (internal quotations omitted)). This includes handcuffing a

---

[2] The court in *Leal* noted that "[a] stop may be too long if it involves 'delay unnecessary to the legitimate investigation of the law enforcement officers.'" *Leal*, 235 Fed. Appx. at 941 (citing *Sharpe*, 470 U.S. at 687). Clearly in this case, Defendant was detained only as long as was necessary for the detectives to complete their immediate investigation.

person being temporarily detained as the police are conducting their investigation. *Flowers v. Fiore*, 359 F.3d, 24 (1st Cir. 2004).

In this case, Detectives Marano and McDermott were engaged in an ongoing homicide investigation. It was after 10 o'clock at night, and it was dark. The Detectives had just located in the garage at 2636 Daphne Road the car that had been used in the homicide. They believed that the murder suspect might be hiding in the garage at that very moment. They believed that the murder suspect lived at 2636 Daphne Road. Defendant came out of 2636 Daphne Road as Detective Marano was attempting to determine whether the suspect was in the garage. Based upon their investigation, the Detectives had reason to believe the murder suspect was armed.

Detective McDermott stopped Defendant as Defendant was hugging the wall edging toward Detective Marano. The Detectives did not know what Defendant's relationship was with Randall Austin, the Silver Mercedes, 2636 Daphne Road or the homicide that they were investigating. For their own safety, the Detectives patted Defendant down, handcuffed him, and placed him in the rear of their police car. The Detectives were acting in a manner consistent with *Terry* by removing Defendant from the area for their own safety while they completed their investigation of the Mercedes and the garage at 2636 Daphne Road. After Defendant was placed in the police car, he started yelling and set off the car alarm. The detectives believed that Defendant was trying to alert someone in the house to the police presence outside. They acted reasonably in removing the car keys from Defendant's person to prevent him from compromising their investigation. The subsequent pat down of Defendant when he was placed in the police wagon while the premises were secured was also reasonable. Defendant had at that point intentionally injected himself into the homicide investigation, and based upon his behavior,

the Detectives suspected that Defendant could be involved in the crime that they were investigating. The fact that Defendant was released and not charged with a crime is of no consequence. *See Illinois v. Wardlow*, 528 U.S. 119, 125-26 (2000) ("*Terry* recognized that the officers c[an] detain . . . individuals to resolve ambiguity. . . . *Terry* accepts the risk that officers may stop innocent people.").

In this case, the central issue in evaluating whether the *Terry* stop violated Defendant's Fourth Amendment rights is whether the Detectives had reasonable suspicion to stop, pat-down and detain Defendant as they continued to conduct their investigation. We are satisfied that they did.

For these reasons, Defendant Walker's Motion will be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL ACTION |
| | : | |
| TERRY WALKER | : | NO. 05-440-11 |

**ORDER**

AND NOW, this 23rd day of September, 2008, upon consideration of Defendant Terry Walker's Motion to Suppress Physical Evidence, *Nunc Pro Tunc*, (Doc. No. 908), and after hearing in open court, it is ORDERED that the Motion is DENIED.

IT IS SO ORDERED.

BY THE COURT:

R. Barclay Surrick, Judge