IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA            :

       v.                              :            CRIMINAL NO.  05-440-01

ALTON COLES                         :

## SENTENCING MEMORANDUM

The United States of America, by Laurie Magid, United States Attorney for the Eastern District of Pennsylvania, and Richard A. Lloret and Michael J. Bresnick, Assistant United States Attorneys, respectfully submits this Sentencing Memorandum to assist the Court in sentencing the defendant, Alton Coles.

## I.    INTRODUCTION

On February 21, 2007, a federal grand jury returned a 194-count Fifth Superseding Indictment charging defendant Coles with multiple and varied offenses, arising out his leadership of a very large cocaine and cocaine base distribution enterprise for at least seven years, between 1998 and 2005.  After a seven-week trial, Coles was convicted by a jury on March 4, 2008 of the following offenses:

- conspiracy to distribute 5 kilograms or more of cocaine and 50 grams or more of crack cocaine (Count One);

- a continuing criminal enterprise, or "CCE" (Count Two);

- multiple episodes of using a telephone to facilitate drug trafficking (Counts 38, 41, 43, 45-48, 50 through 55);

1

- distribution of cocaine (Count 40 - May 28, 2005, at a Kentucky Fried Chicken in Southwest Philadelphia);

- possession of cocaine with intent to distribute (Count 62 - August 10, 2005, at 339 Essex Avenue in Lansdowne, Pennsylvania);

- maintaining a drug storage facility (Count 49 - Monique Pullins' apartment, at 1416 Clearview Street, Apartment F520, Philadelphia, Pennsylvania; Count 61 - 339 Essex Avenue);

- money laundering conspiracies (Counts 77 - with Kristina Latney, various automobiles; Count 80 - with Asya Richardson, the 117 Dillon's Lane, Mullica Hill, NJ property);

- money laundering (Counts 78 and 79 - automobiles, with Kristina Latney);

- structuring (Counts 81-86 - 117 Dillon's Lane transactions);

- carrying a firearm during and in relation to a drug trafficking crime (Counts 70 (at Monique Pullins' apartment), 72 (at the Woodstown, NJ property);

- possessing a firearm in furtherance of drug trafficking (Count 68 - 339 Essex Avenue);

- felon in possession of firearms (Count 59 (March 27, 2004); Count 60 (October 24, 2004); Count 69 (339 Essex Avenue); Count 71 (at Monique Pullins' apartment);

- investing drug trafficking proceeds in an entity engaged in interstate commerce (Count 176 - the Spectrum concert in April, 2002).

Coles faces sentencing on April 16, 2009. This is the government's sentencing

memorandum.

## II.    <u>PRE-SENTENCE INVESTIGATION REPORT</u>

The government concurs generally with the findings in the Pre-sentence

Investigation Report ("PSR"), with certain relatively minor exceptions noted below.  The PSR

calculated defendant's offense level and criminal history category under the Sentencing

Guidelines.  For the purposes of sentencing, the most relevant findings of the PSR concern the

defendant's minimum mandatory sentences, which consist of the following, set forth at paragraph

154 of the PSR:

As to Count One (drug conspiracy): life imprisonment.[1]

As to Count Two (CCE): life.

As to Count 68 (possession of a firearm in furtherance of drug trafficking), five years of

minimum mandatory consecutive time.

As to each of Counts 70 and 72 (possession of a firearm in furtherance of drug

trafficking),  25 years (a total of 50 years of minimum mandatory consecutive time).[2]

---

[1] The defendant has at least two prior felony drug convictions that qualify him for the mandatory minimum life sentence for the conspiracy conviction.  The weight of cocaine involved in the conspiracy was over 5 kilograms.  The weight of cocaine base was over 50 grams.  In each instance, two prior felony drug convictions result in a mandatory life sentence.  21 U.S.C. § 841(b)(1)(A).  The PSR suggests a 20 year mandatory minimum sentence applies.  PSR ¶ 154(a). This would ignore the impact of the second felony drug conviction.

[2]  The PSR adds minimum mandatory consecutive time for counts 181-184, all of which charged violations of 18 U.S.C. § 924(c).  Defendant was acquitted of counts 181 (involving an October 24, 2004 arrest with Adrian McKenzie outside a club in Philadelphia) and 182 (involving a March 27, 2004 arrest in Southwest Philadelphia) by the jury, and the court dismissed counts 183 and 184 (both of which involved an October 22, 2004 shoot-out at South Cecil Street and Kingsessing Avenue in Southwest Philadelphia) under Fed. R. Crim. P. 29 before the jury considered them.

Thus, defendant faces a minimum mandatory sentence of life plus 55 years.

The defendant's guideline's calculations are exactly the same.  They are summarized as follows:

Base offense level (§ 2D1.5, CCE, plus kingpin status)       42

Specific Offense Characteristic (money laundering)       2

Obstruction of Justice       2

PSR ¶¶ 94-102.

Because the defendant's offense level calculations under chapter two of the sentencing guidelines (level 46) are higher than his career offender calculation under chapter four (level 37), his chapter two guideline calculation controls, at an offense level of 46.  PSR ¶ 100.

Defendant's varied and long-term criminal history includes convictions for the following offenses.  PSR ¶¶ 103-126:

Possession with intent to deliver crack cocaine, at age 16, in 1990 (*juvenile conviction assigned no criminal history points under the guidelines*);

Possession with intent to deliver crack cocaine, at age 17, in 1991 (*juvenile conviction assigned no criminal history points under the guidelines*);

Possession of crack and reckless endangerment (defendant fled from police after being stopped) at age 19, in 1993;

Possession of controlled substances, possession of a firearm without a license, and criminal conspiracy at age 20 (3/15/1994 arrest);

Delivery and possession with intent to deliver cocaine at age 20 (4/15/1994 arrest);

Reckless endangerment (defendant fled from police, violated the speed limit and failed to stop at several stop signs) at age 21, in 1995;

False statement to police (defendant signed his name Lamar Johnson after the reckless endangerment arrest);

Possession of crack cocaine with intent to distribute within 1000 feet of a school in Cherry Hill, NJ at age 22, in 1996;

Cruelty to animals (a pit bull dog fighting arrest in Toms River, New Jersey) at age 27, in 2001.

Bail jumping in Camden County, NJ, at age 28, in 2002.

The defendant's total criminal history points, assigned under the guidelines for the various adult convictions, above, are 18. Thirteen or more criminal history points result in a criminal history category of VI, the highest available. The defendant's offense level, 46, and criminal history category, VI, result in a guidelines imprisonment range of life.

The guidelines track the statute in imposing a guideline range of 55 additional, consecutive years of imprisonment, over and above the defendant's life sentence, because of the defendant's three convictions in this case under 18 U.S.C. § 924(c).

Under both the statutes of conviction and the sentencing guidelines, the defendant faces a sentence of life plus 55 years. Under any rational reading of the constant criminal conduct that has consumed the defendant's life, and the lives of his many co-conspirators, the defendant should receive every bit of the sentence prescribed for him by the U.S. Congress and the United States Sentencing Commission.

III.    **SENTENCING CONSIDERATIONS**

Because this case involves minimum mandatory sentences under the statutes of conviction, it would be possible for the court at sentencing to merely note the existence and applicability of the statutes and impose the requisite sentence of life plus 55 years imprisonment.

The government recommends, however, that as an exercise in prudence the court take into consideration and make appropriate findings under 18 U.S.C. § 3553(a), as directed in

United States v. Booker, 543 U.S. 220, 261 (2005).  First, as stated in Section 3553(a)(4), the

Court must determine and consider the sentencing range established in the Sentencing

Guidelines.  The Third Circuit has confirmed:  "In consideration of the § 3553(a) factors, a trial

court must calculate the correct guidelines range applicable to a defendant's particular

circumstances."  Cooper, 437 F.3d at 330.  This Court should  make findings pertinent to the

guideline calculation by applying the preponderance of the evidence standard, in the same

fashion as was employed prior to the Booker decision.  Id.

Once the Court has properly calculated the guideline range, the Court should next

consider all of the sentencing considerations set forth in Section 3553(a).

*(1) the nature and circumstances of the offense and the history and characteristics of the*

*defendant:*

The defendant was the ringleader of a massive, violent, long term drug

conspiracy.  It is very difficult to overstate how damaging the defendant's

conduct was to the City of Philadelphia and surrounding area.

*(2) the need for the sentence imposed--*

*(A) to reflect the seriousness of the offense, to promote respect for the law, and to*

*provide just punishment for the offense;*

The offense was grave, long lasting and life threatening.  A life sentence is

the only one that can adequately reflect its seriousness.

*(B) to afford adequate deterrence to criminal conduct;*

Because of the tens of millions of dollars generated during the course of

the conspiracy, and the lavish life-style led by the defendant, the

temptation for the person aware of his situation would be to run the risks he took in order to reap the financial rewards he made. A life sentence - and a life sentence alone - can adequately deter such conduct.

*(C) to protect the public from further crimes of the defendant; and*

Given the defendant's life long obsession with criminal behavior, the court can and should find that only a life sentence will protect the public from future crimes. Defendant's past history demonstrates that at any point he is out of jail we may confidently assume he is committing felonies.

*(D) to provide the defendant with needed educational or vocational training,*

*medical care, or other correctional treatment in the most effective manner;*

Given his criminal history, any employment and educational opportunities afforded by the Bureau of Prisons will be better than the alternatives defendant would pursue if at liberty.

*(3) the kinds of sentences available;*

Incarceration in a federal prison is necessary to punish defendant's serious offense conduct and to deter future, similar conduct. Alternatives to incarceration are simply ludicrous, in defendant's case.

*(4) the kinds of sentence and the sentencing range established for--*

*(A) the applicable category of offense committed by the applicable category of*

*defendant as set forth in the guidelines . . . issued by the Sentencing Commission .*

*. . that . . . is in effect on the date the defendant is sentenced; . . .*

The Sentencing Guidelines carefully weigh the various factors applicable

7

to sentencing in arriving at a recommendation.  They should be followed.

*(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced.*

The Sentencing Commission established guideline imprisonment ranges by "estimating the average sentences now being served within each category."  U.S.S.G. §1A1.1(4)(g).  It departed from the data on existing sentences only "for various important reasons . . ."  U.S.S.G. §1A1.1(3).  The purposes of the Sentencing Reform Act of 1984 are "deterrence, incapacitation, just punishment, and rehabilitation."  U.S.S.G. §1A1.1(2).  In achieving its goals, Congress sought honesty, uniformity and proportionality in sentencing.  U.S.S.G. §1A1.1(3).  In this case, as in most cases, the various important purposes of sentencing can best be reconciled by following the Sentencing Guidelines recommended imprisonment range.  Since the defendant has, in essence, promoted himself to a position beyond the edge of the criminal misbehavior contemplated under the guidelines, he should be rewarded with the only sentence that makes any sense of the system Congress sought to impose, life imprisonment.  Anything less would exert downward pressure on the guideline sentences of other, less culpable defendants.

*(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and*

A life sentence is appropriate for any individual with the defendant's

combination of extreme offense conduct and extreme criminal history. We are dealing here with a pathologically dangerous, persistent and prolific criminal.  In this case, as in most cases, Congress' statutory purposes can best be served by following the Sentencing Guidelines.

*(7) the need to provide restitution to any victims of the offense.*

Restitution is not an issue in this case.

## IV.    <u>RECOMMENDATION</u>

The government recommends a sentence of life plus 55 years imprisonment, in accord with the statutes of conviction and the United States Sentencing Guidelines.

Respectfully submitted,

LAURIE MAGID
United States Attorney

_____

RICHARD A. LLORET
Assistant United States Attorney

Date: April 13, 2009

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Sentencing Memorandum was served by fax on the following defense counsel:

Christopher D. Warren
1500 Walnut Avenue
Suite 1500
Philadelphia, PA 19102
Ph: (215) 546-3750
Fax: (215) 546-8779
email: Christopherduffwarren@hotmail.com
        Counsel for Alton Coles (1)



_____
RICHARD A. LLORET
Assistant United States Attorney


Date: April 13, 2009