Mr. Hakiem Johnson
#60389-066
USP Hazelton - Camp
P.O. Box 2000
Bruceton Mills, WV 26525



RECEIVED

MAR 9 2015

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| PLAINTIFF/RESPONDENT ) | Case: 05-440-09 |
| ) | |
| VS ) | Civil: 14-7127 |
| ) | |
| HAKIEM JOHNSON ) | **MEMORANDUM IN REPLY TO** |
| ) | **GOVERNMENT § 2255 RESPONSE** |
| DEFENDANT/PETITIONER ) | |
| ) | |

NOW RETURNS the petitioner, HAKIEM JOHNSON (hereinafter "petitioner" or "Johnson"), filing pro se, respectfully clinging tenaciously to the Court Order dated February 12, 2015 germane to filing this Memorandum in Reply to the government's answer to his recharacterized Section 2255 with "equitable tolling" in allowance, so he can proceed in collateral attack on the merits of his petition. This denial has been repugnantly meandering.

The petitioner has labored eight long years having never wavered from his "actual innocence" position, whereby he entered a plea of guilty to a criminal charge that asserts a double jeopardy claim in a collateral attack upon the sentence.

(2) Only one conspiracy breathes herein, as the double jeopardy principles require the conviction and sentence on the second conviction to be set aside.

For eight long years, this government has managed to keep "equitable tolling" suppressed and has benefited in full by disallowing any court from setting the record straight that Hakiem Johnson has been inappropriately detained in Federal prison for all the wrong reasons.

**STATEMENT OF CASE**

On August 8, 2008, Johnson entered a guilty plea to Count 1, of the fifth superseding indictment charging conspiracy to distribute five kilograms or more of cocaine and 50 grams or more of crack cocaine in violation of 21 U.S.C. § 846 and § 841 (a)(1)(A).

Additionally, he pled guilty to Count 65, charging possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924)c).

On June 29, 2009, Johnson was sentenced to 120 months on Count 1, and a consecutive term of 60 months on Count 65.

The petitioner did not file a direct appeal, and on January 21, 2014, he filed a § 2241 in the Northern District of West Virginia conjoined with the "savings clause". He was then afforded the opportunity to recharacterize his § 2241 into a motion pursuant to 28 U.S.C. § 2255. The honorable court in West Virginia issued a

(3) notice of conversion.

On November 18, 2014, Johnson notified the Court that he elected to convert the motion to a § 2255 which is now before this court.

The government was quick to object citing it as "untimely" with support in argument this honorable court saw fit to deny.

The petitioner appears as ordered by this tribunal with "equitable tolling" as he now takes steps with due diligence.

Nonetheless, the government's five page answer superficially broaches the merits of this case conveniently suppressed eight years ago.

Only 14 lines of declamation address those merits, while the balance of its reply lingers where the government has always spent its time during the past eight years in rejoinder to the petitioner's motions, with reasoning being constant as "untimely".

With "equitable tolling, the petitioner now brings to bear with point of concentration on his singular contention that "double jeopardy" deprived him of a fair trial eight years ago.

From the government's "answer" to the recharacterized § 2255, it becomes plainly visible it presents two arguments in opposition.

First, it makes the bold and inaccurate statement

(5) and if they raise disputed issues of fact a hearing must be held. (<u>Machibroda v United States</u>, 368 U.S. 487, 494, 495 - 1962) (<u>Romero v United States</u>, 327 F.2d 711, 712 - 5th Cir - 1964).

"The answer must address the allegations in the motion." Thus, if an allegation is not so addressed, it must be determined to mean the government holds no concern over its validity or statement as acceptable.

Heretofore, are several issues being brought forward in Johnson's petition.

1. The petition reads, "the stated indictment subjected him to double jeopardy in violation of the Federal Constitution's Fifth Amendment...he now maintains he has been prosecuted twice for the same offense after conviction...the government violated the <u>Double Jeopardy Clause</u>...

2. The instant action satisfies the "<u>Blockburger</u>" test which prohibits successive prosecutions for the same criminal act.

3. The elements in the instant case and the state case in 2004 are identical. With deception, the government has compounded <u>Count #58</u> with <u>Count #1</u>.

4. The government literally created a fatally defective indictment by design for the instant action from the state case in 2004.

5. The government should have employed the

(6) Blockburger Test, which would have clearly demonstrated the state indictment in 2004 and the federal offense in 2008 lacked any hint at multiple offenses. (Blockburger v United States, 284 U.S., 299, 301 - 1932) (Rutledge v United States, 517 U.S. 292, 297 - 1996).

This test would have clearly shown there was a substantial overlap in the evidentiary showings for the two offenses. (United States v Felix, 503 U.S. 378, 386 - 1992). And this is not a mere overlap between two prosecutions. The court need only look at the two conspiracies as they contain overlapping proof. They state the same offense deductible by the totality of the circumstances test that considers the timing, geographic location, participation, overt acts committed, and statutory provisions invoked in each alleged conspiracy. With deceptive advertising, the government vindicated Count #58 so it could charge Count #1 to the petitioner veiling the impropriety of double jeopardy (United States v Gerhard, 615 F.3d 7, 19-20 - 1st Cir - 2010). This was the fifth superseding indictment, clear-cut evidence the government was experiencing difficulty in labeling Johnson with a criminal charge.

6. The government noticeably dismisses Count #58, which in revelation confirms double jeopardy was part and parcel to the case at bar. This dismissal was in violation of the Double Jeopardy Clause.

7. The government simply replaced Count #58 in

(7) the Fifth Superseding Indictment with Count #1, still establishing an essential element of the second crime by proving the conduct for which the defendant was convicted in the first prosecution.

Fairly, the government makes no mention of any of the aforesaid in its "answer". An "answer" by rule must address all the allegations. Since the government presented no dissent on all the allegations, the court must accept the petitioner's statements as factual.

With that now in evidence, let us direct our attention to what the government did address in its answer. In 14 lines of narrative it alleged two points.

For eight years, the petitioner has patiently forestalled to see justice served, where "justice" saw fit to impose 180 months of imprisonment on him. For eight years, he has tried desperately to convince the judiciary to hear his cry for help...he has been convicted twice for the same crime. At large, he has finally attained the venue and forum essential, and he describes sound facts of reason and law to substantiate his double jeopardy violation. The government begins its course of reasoning saying he waived his double jeopardy claim <u>by pleading guilt</u>y and <u>the "dual sovereignty doctrine</u> compels the conclusion that successive prosecutions by "two states for the same conduct" are not barred by the <u>Double Jeopardy Clause</u>. So be it!

(8) The Double Jeopardy Clause of the Fifth Amendment states that no person shall be subject to the same offense to be twice put in jeopardy of life or limb. This includes imprisonment. (Yeager v United States, 557 U.S. 110, 117 - 2009). In the instant action the clause protects against "a second prosecution for the same offense after a conviction. (Ohio v Johnson, 467 U.S. 493, 498 - 1984).

The petitioner acknowledges that double jeopardy does not prevent a defendant from being subjected to both a criminal punishment and a civil sanction. Rather, it protects only against the imposition of multiple criminal punishments for the same offense. (Hudson v United States, 522 U.S. 93, 99 - 1997).

In its "answer" the government makes the bold and inaccurate statement, "First, Johnson waived any double jeopardy claim by pleading guilty." The government is far too cavalier with this statement in misdirection for the court. Although a guilty plea waives most constitutional claims (Tollett v Henderson, 411 U.S. 258, 267 - 1973), it usually does not waive a claim of double jeopardy. (Menna v New York, 423 U.S. 61, 62-63 & n.2 - 1975). In "Tollett", the court reasoned that because a guilty plea is an admission of factual guilt, the defendant may not subsequently raise "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." (id 411 U.S. at 267).

(9) The <u>Double Jeopardy Clause</u>, however, prohibits the government from convicting the defendant regardless of the defendant's factual guilt (See <u>Menna</u>, 423 at 62) (<u>United States v Grant</u>, 114 F.3d 323,329 - 1st Cir - 1997).

To support it's point, the government cites "Broce", void any specific application therein. In view, the government presents this court with a "beginning and an end". Noticeably absent, however, is the "middle", the step-by-step reasoning that supports the government's contention that "Broce" and "Johnson" are compatible in denial. We think not.

In "Broce", the Supreme Court held that a defendant who voluntarily and intelligently pleads guilty to two separate conspiracy indictments in a single proceeding relinquishes the opportunity for a factual hearing on a subsequent double jeopardy claim. (<u>United States v Broce</u> - citations omitted). The government misses the mark in its attempt to deny Johnson because of "Broce" law. It took five indictments to prefer charges against Hakiem Johnson. This honorable court is beseeched to note the following issues, now being resurrected eight years later.

The "Broce" case involved two indictments dealing with double jeopardy. Both indictments were discussed during plea negotiations and purportedly they were subject to separate sentences.

Here, there were two respondents and both had

(10)   counsel at all stages, there were no allegations that counsel was ineffective.

Beachner won acquittal, Broce tried to benefit from that occurrence. This case was reheard en banc. The "<u>Blackledge</u>" and "<u>Menna</u>" cases came into play. A divided en banc court concluded that the respondents were entitled to draw upon factual evidence outside the original record to support their claim of a single conspiracy.

Two significant rulings occurred. The en banc court rejected the government's argument that respondents had waived the right to raise their double jeopardy claim by pleading guilty (which is the government's singular reason for affixing "Broce" with "Johnson", i.e., "Johnson waived any double jeopardy claim by pleading guilty"). The en banc court further held that the <u>Double Jeopardy Clause</u> "does not constitute an individual right which is subject to waiver." It further rejected the Government's contention that the respondents guilty pleas must be construed as admissions that there had been separate conspiracies.

In further observation that the government's referral to the "Broce" court in support of its attack on "Johnson", this court is introduced herein to "Kaiser". (<u>United States v Kaiser</u>, 833, F.2d, 1019 - 11th Cir - 1987)
Here, it was concluded that Kaiser's guilty plea did not waive his right to raise the double jeopardy claim and that his convictions in his case were a violation of the <u>Double Jeopardy</u>

(11) Clause. It must be noted, the Supreme Court has recognized that there are exceptions to the rule barring collateral attacks on a guilty plea. One such exception involves the "Menna" and "Blackledge" courts. This exception occurs when a charge against a defendant, judged on the basis of the record that existed at the time the guilty plea was entered, is one the State may not constitutionally prosecute. "Broce" clearly did not fit the "Menna/Blackledge" exception, "Kaiser and Johnson" do, and therefore Johnson's plea did not waive his right to challenge his conviction.

In "Broce" the defendants pled guilty to an indictment that, on its face, described separate offenses (two different conspiracies). The court concluded the defendants' guilty pleas admitted guilt for two conspiracies. This established that their cumulative convictions and punishments violated double jeopardy, without relying on factual evidence outside the guilty plea record. The defendants were therefore barred from challenging their convictions.

In the instant action, this court does not have to rely on evidence outside the guilty plea record to determine that Johnson's punishment violated the Double Jeopardy Clause. This Clause prohibits punishing a person twice for the same offense. (Brown v Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed 2d 187 - 1977).

The Double Jeopardy Claim affords Johnson three basic protections, "It protects against a second

(12)  prosecution for the same offense after acquittal; it protects against a second prosecution for the same offense after conviction (<u>as the case at bar</u>), and it protects against multiple punishments for the same offense (<u>as the case at bar</u>).

The Blockburger test itself should suffice. The Supreme Court held that the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Here, Johnson asserts neither the case in 2008 or 2004 requires a single additional fact to change it into two separate charges.

For the foregoing reasons, Johnson may not be convicted and sentenced for his 2008 conviction as double jeopardy is applicable. There was only one conspiracy and subsequent criminal offense.

In reference, the court is directed to these significant case highlights, all applicable to demonstrate that the second indictment in 2008 could not go forward as it was facially duplicative of the earlier offense in 2004 and Johnson's guilty plea could not conceivably be construed to extend beyond a redundant confession to the earlier offense. It took a fifth superseding indictment to charge the petitioner...there was a <u>suppression hearing</u>

(13) for the <u>Bill of Particulars</u> which the government made certain would not surface...a <u>Franks Hearing</u> was sought because the petitioner was convinced his neighbor's house was searched in error so the government could use that excuse to unlawfully search his house where two firearms were discovered (both introduced at his first conviction)...before securing a court ruling for the Franks Hearing, the <u>government admitted the wrong house</u> had been searched...the petitioner knew the fifth superseding <u>indictment was duplicitous</u> in error...the <u>same evidence</u> in the state case was used to satisfy his indictment in the federal case...The <u>Bill of Particulars</u> would have proven this government duped the grand jury with disallowable evidence to bar the double jeopardy claim...

In furtherance, there remains nothing to prove in support in this case here and now. The government immediately prior to the fifth superseding indictment dismissed <u>Count #58</u>, saying almost apologetically, "...it would be in the interests of justice to dismiss the count..." This was dismissed on <u>May 22, 2008</u>, and clearly saved the government a mistrial in the instant action.

Dismissal, however, was too late. The Grand Jury had already seen <u>Count #58</u>, which was used to construct <u>Counts #1</u> and <u>#65,</u> the only two counts eventually charged to Johnson.

Let's not forget there were 21 people named in this conspiracy with 194 indictments. The

(14) government admitted Count #58 was defective, but when it was used to create Count #1 it was then branded in duplicity. Count # 1 and Count #58 are mirrored creating a duplicative prosecution.

To any reasonable finder of fact, what doubt can coexist? Counts #1 and #58 rest on precisely the same factual predicate.

With blatant vindictiveness and disregard for law, this government was within its rights to motion for dismissal of Count #58 of the indictment, it could not modify or change that indictment, which it did with Count #1. Both counts were interactive. The Grand Jury had to be revisited with "new evidence" and the process had to recommence. This never happened!

With all due respect, so as not to detain this court with redundancy, the petitioner refers this court to page 19 of his recharacterized § 2255. It explains all!

Now determinative, the government clearly reviewed data from the state case, presented it to the grand jury in his federal case to support Counts #1 and #65.

Rule 5(c) of Section 2255 states with conviction, "If the answer refers to briefs or transcripts of the prior proceedings that are not available in the court's records, the judge must order the government to furnish them..." Clearly, those

(15) <u>Bill of Particulars</u> would serve justice in the case at bar.

Would an <u>Evidentiary Hearing</u> serve justice? <u>Rule 8(a)</u> suggests, "If the motion is not dismissed, the judge must review the answer...and any materials submitted under Rule 7 to determine whether an <u>Evidentiary Hearing</u> is warranted."

Or, via <u>Rule 8(b)</u>, is it appropriate to "...refer the motion to a magistrate judge to conduct hearings and to file proposed finding of fact and recommendations for disposition."

Johnson contends reversal of <u>Count #1</u> will require reversal of <u>Count #65</u> due to the prejudicial spillover effect.

"It is only in those cases in which evidence is introduced on the invalidated count that would otherwise be inadmissible on the remaining counts, and this evidence is presented in such a manner that tends to indicate that the jury probably utilized this evidence in reaching a verdict on the remaining counts, that spillover prejudice is likely to occur." (<u>United States v Roone</u>y, 437 F.3d, 847, 856 - 2nd Cir - 1994) (<u>United States v Gore</u>, 184 F.3d 34, 48-49 - 2nd Cir - 1998).Herein, a reversal of Count #1 compels reversing the remaining count.

The second and last remaining argument in the government's "answer" was "the dual sovereignty doctrine".

(16) The dual sovereignty doctrine allows the federal government and a state government to bring successive prosecutions for offenses arising from the same criminal act. The exception recognizes that two sovereigns often have separate, legitimate interests in prosecuting the defendant. (Abbate v United States, 359 U.S. 187, 195 - 1959). The petitioner acknowledges that the Double Jeopardy Clause does not prohibit successive prosecutions by different sovereigns because logically a sovereign with lesser interest might proceed first and preclude prosecution by sovereign with greater interest, like possibly in the instant action. (United States v Frunebto, 563 F.2d 1083, 1088 - 3rd Cir - 1977).

The government uses one case to support its shallow argument, that being Heath vs Alabama (citations omitted). Here, the Supreme Court held that two entities seeking to prosecute a defendant for the same criminal act must be separate sovereigns that derive their authority from distinct sources of power. However, local governments are not considered sovereigns for double jeopardy purposes. Consequently, successive prosecutions by a local government and a state in which it is located are prohibited. In the spirit of this understanding, the D.C. Circuit has affirmed that defendants are entitled to double jeopardy protection in the case of successive prosecutions by D.C. and the federal government. (United States v Weathers, 186 F.3d 948, 951 n.3 DC Cir - 1999). Law bars subsequent

(17)     prosecution for same crime under federal law and vice versa because both codes were adopted by Congress.

The dual sovereignty doctrine has two limitations. First, although mere cooperation between federal and state will not preclude a subsequent federal prosecution, the Supreme Court has suggested that federal and state authorities may not manipulate a system to achieve the equivalwent of a second prosecution, as in the instant action. (<u>Bartkus v Illinois</u>, 359 U.S. 121, 122-24 - 1959). Notwithstanding, "Bartkus" brings to mind existence of a "sham prosecution".

Short of imputation of blame, the petitioner contends this government employed a "sham prosecution" to meet its objective, that being to find something, anything that could satisfy a Grand Jury for an indictment. In the case at bar, it took five superseding indictments.

The entire history of litigation and contention over the question of the imposition of a bar to a second prosecution by a government other than the one first prosecuting is a manifestation of the evolutionary unfolding of law. A "sham prosecution" is, in essence, a misuse of the dual-sovereignty doctrine. Under that doctrine, a defendant's protection against double jeopardy does not provide protection against a prosecution by a different sovereignty. For example, if the defendant was first tried in federal court and acquitted, that fact would not forbid the state

(18)   authorities from prosecuting the defendant in a state court. In the case at bar, Johnson was convicted in state court in 2004. Isn't it possible the 2008 prosecution for the federal authorities used the state-court prosecution to dominate and manipulate the facts as a mere tool in its own case so it would not withstand a double-Jeopardy challenge? It's not only possible, it's probable, and Johnson contends that is precisely what happened.

Second, the <u>Department of Justice</u> (DOJ) has adopted an internal practice known as the "petite policy" which allows the federal government to bring a successive prosecution only when there are compelling reasons to do so and the prosecuting attorney obtains foregoing approval from the appropriate United States Assistant Attorney General (<u>US Attorney's Manual</u> § 9-2.031 - 2009). The "<u>petite policy</u>" applies only if the defendant was actually brought to trial in state court. (<u>United States v Gomez</u>, 776 F.2d 542, 550 - 5th Cir - 1985). No such action was ever employed.

**CONCLUSION**

Quasi, the exact meaning of double jeopardy is quite basal, "...you are guaranteed the right not to be tried twice for the same offense..." All the same, add the wrong words in the right place, shelter it with accessible ambiguity in law, and double jeopardy has ever so many liberal interpretations.

(19) With certitude, the government is barred from starting a new criminal trial after the first court action has commenced, inclusive of appealing a verdict of acquittal.

In the instant action, "double prosecution" was apparent in 2008 when this government exhausted the "written accusation process" by creating five superseding indictments in order to "get their man", Hakiem Johnson.

Regrettably, the indictment was factually predicated on a previous state conviction, so named herein. If justice was the target, the government missed the mark. Otherwise, the defense would have been allowed to review the Bill of Particulars which clearly would have shown n all the duplicity used by the government to convince a Grand Jury to issue an indictment.

In furtherance, one need travel no greater distance to conclude this case was a miscarriage of justice.

Herein, the state government tried and convicted Johnson for the same crime federal authorities did a short time later.

To start, Johnson's state charges cover the exact same time span as does his federal charge, the period from 1998 through 2003. Count #1 of the instant action is permanently recessed as duplicative. It reads in part, "...The Grand

(20)   Jury charges that from or about a date unknown to the Grand Jury, beginning at least in January 1998 through in or about August 10, 2005, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendants,...conspired and agreed...knowingly and intentionally distributed controlled substances..."

The duplication is void any possible argument since the record shows the petitioner's state case covered a timeframe from 1998 through 2003, therefore, the Double Jeopardy Clause cannot be disputed in argument.

The petitioner prays this honorable court will accept, for the foregoing reasons, that Hakiem Johnson may not be convicted and sentenced for both the state and federal crimes so stated, because they are one in the same.

Thus, the conviction and sentence for the case at bar must be vacated and the judgment of this court must be modified accordingly.

#####

Respectfully submitted by,

*[signature]*

MR. HAKIEM JOHNSON
#60389-066
USP Hazelton - Camp
P.O. Box 2000
Bruceton Mills, WV 26525         Date: March 6 2015

CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, the foregoing document. MEMORANDUM IN REPLY TO GOVERNMENT § 2255 RESPONSE, was mailed by United States Postal Service to the following participant:

Mr. Robert A. Zauzmer
Asst U.S. Attorney
U.S. Dept of Justice
US Attorney's Office
615 Chestnut Street (#1250)
Philadelphia, PA 19106-4476

MR. HAKIEM JOHNSON
#60389-066
USP Hazelton - Camp
P.O. Box 2000
Bruceton Mills, WV 26525          Date: March 6 2015